VICTORY GLASS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8800.   Promulgated September 21, 1951.

*Sidney B. Gambill, Esq.*, for the petitioner.

*A. W. Dickinson, Esq.*, and *Arthur N. Mindling, Esq.*, for the respondent.

Murdock, *Judge:* The petitioner claims that the assets acquired through the foreclosure sale had a fair market value of $107,590.78 and the excess of that amount over $38,163.38, or $69,427.40, also should be included in equity invested capital, being property paid in as paid-in surplus or as a contribution to capital, and should be considered as a part of the basis of the assets for the purpose of computing depreciation. It advances no logical reason for regarding the $69,427.40 as a part of its basis for depreciation. The basis of property owned by a taxpayer is the cost of the property to the taxpayer, with exceptions as set forth in section 113 (a) which are not applicable here. The cost of the property in question was $38,163.38, consisting of preferred stock worth $31,200 and $6,963.38 of liabilities assumed, as both parties now agree.

The petitioner argues vaguely that it is entitled to use some transferor's basis. The evidence does not disclose any transferor which had a basis of $107,590.78 for the property or any transaction in which a transferor's basis in excess of $38,163.38 could be passed on to the petitioner under any provision of the Internal Revenue Code. The petitioner mentions section 113 (a) (8) (B) which provides that the basis of property acquired by a corporation as paid-in surplus or as a contribution to capital shall be the same as it would be in the hands of the transferor, increased by gain or decreased by loss recognized to the transferor on the transfer. The property was transferred to the petitioner by the first mortgage bondholders of the Victory Glass Company, as an integral part of the plan which they alone could not have carried out. They had no basis for the property in excess of $38,163.38 and had no gain on the transfer of the property to the petitioner. The stockholders, creditors, and second mortgage bondholders of Victory Glass Company, to whom the petitioner points as possible transferors, never owned the property, never had any basis for it, and never transferred it to the petitioner. They were forced out by the need for new money which they were unwilling or unable to supply. The Victory Glass Company never transferred the property to the petitioner but lost it through a foreclosure sale to the first mortgage bondholders and deducted, as a loss on that sale, the difference between its basis and $38,163.38. Thus, even assuming that the property might have come in as paid-in surplus or as a capital contribution, nevertheless, the basis would not exceed $38,163.38. Cases cited require no discussion since the facts in the present case do not bring it within them. The petitioner fails to set forth step by step any sound theory, with provisions of the Internal Revenue Code to support each step, giving it a basis in excess of $38,163.38, and the

Court knows of no such theory which the facts of record would support.

The petitioner concedes that decision of the equity invested capital issue is unnecessary if it is granted relief under section 722. However, the above holding that the assets had a basis of $38,163.38 decides the equity invested capital issue against the petitioner since section 718 (a) (2), upon which the petitioner relies, provides that property paid in shall be included in equity invested capital at its basis to the taxpayer. Thus, even though it was contributed by someone, still it would go in at $38,163.38, the amount conceded by the Commissioner. Consideration of the estoppel issue raised by the Commissioner becomes immaterial since the Court does not hold against the Commissioner on either of the points involved therein.

The petitioner made a proper application for relief under section 722 (b) (4). It claims that it commenced business and changed the character of its business during the base period. The changes in character listed in the application were "changes in the operation and/or management," "differences in products and/or services rendered," and "differences in the capacity for production and/or operation." The petitioner had a plan of operation and a certain management when it started to operate on February 1, 1937, and there is no suggestion in the record of any change in either through December 31. 1939. It planned to produce certain lines and it merely carried out that intention during the base period. There was no change in that. It purchased a new tank, new lehrs, and other equipment, all costing substantial amounts, which may have increased its capacity for production during the base period. But that question is of no great importance since obviously this petitioner commenced business on February 1, 1937, as the respondent recognizes, and that fact is sufficient to satisfy one requirement of section 722 (b) (4). The fact that Victory Glass Company was engaged in a similar, or even the same, kind of business does not change the fact that the petitioner commenced business during the base period, for its business was not that of the petitioner and, as the respondent states in his brief: "The company was new; the predecessor had been a failure. The new owners of the common stock were making their first venture in the glass business; * * *." The new owners, the common stockholders, knew that their business, to succeed, would have to differ from that of the former company.

The record shows that the average base period net income of the petitioner for 2 years and 11 months of operation does not reflect the normal operation for the entire base period. It shows also that sales and profits would have been greater at the end of 1939 if the petitioner had commenced business 2 years prior to February 1, 1937. The

only substantial difficulty presented is to determine what its earnings probably would have been by the end of the base period if the petitioner had commenced business on February 1, 1935, and what is a fair and just amount to be used as constructive average base period net income.

Where, as here, the Code authorizes a departure from actual earning figures, it calls for a prediction and an estimate of what earnings would have been under assumed circumstances, an approximation where an absolute is not available and not expected.

Each taxpayer seeking relief should make its proof as clear and convincing as possible to obtain the full benefit granted by the law. Perhaps this petitioner could have offered more and better proof in support of its application. Still, the Commissioner has a regulation which provides that relief is in order where a business is commenced during the base period and shows steady growth to the end of that period and it is difficult to understand how he could fail to grant some relief in a case like this. Regulations 112, section 35.722–3 (d).

The petitioner called two C. P. A.'s as witnesses. One had made a complicated computation and a graph to project future sales from a trend supposedly shown by actual sales for the 2 years and 11 months of the base period. His method might be ideal, yet the record is weak in evidence to show the reliability of such a method as applied in this case. The other, with no experience in or special knowledge of the petitioner's business, attempted to show what its earnings would have been for 1939 had sales been 15 per cent greater. His testimony supplies no fact. Argument from existing evidence would be as persuasive without his testimony as with it. The ability of these witnesses to make the mathematical computations is not questioned. More helpful is the uncontradicted testimony of a director, the principal common stockholder, that sales would have been at least 20 per cent greater by the end of 1939 had the business been commenced 2 years earlier, supported, as it was, by other evidence that the business was still growing at the end of 1939. He also testified that costs declined relatively as production increased and as hand work was replaced by machines. The parties stipulated statistical data from which normal earnings for prior years might be estimated from constructive 1939 earnings. Some such method, subject to error as it probably is, must be used and has been used by the Court in arriving at the "fair and just amount to be used as constructive average base period net income."

The parties have not argued the matter of an unused excess profits credit carry-over from 1940 to 1941 and the Court expresses no opinion as to that issue.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*

BLACK, *J.*, dissenting: I disagree with the majority opinion of the Special Division in one important respect. In a 722 case, like any other case which comes before the Tax Court for decision, the burden of proof is upon the petitioner. What does this burden of proof require in a case such as we have here? In *East Texas Motor Freight Lines*, 7 T. C. 579, we said:

Under the statute petitioner must establish (1) that the tax computed without the benefit of section 722 results in an excessive and discriminatory tax and (2) a fair and just amount representing normal earnings to be used as a constructive average base period net income. If petitioner establishes these two requirements, then the tax shall be determined by using such constructive average base period net income in lieu of the actual average base period net income otherwise determined under the statute. * * *

To the same effect is *Lamar Creamery Co.*, 8 T. C. 928.

Has petitioner met its burden of proof in establishing the two foregoing requirements to secure relief under section 722? I think it has as to requirement (1). The majority opinion has a finding of fact which reads: "The petitioner commenced business on February 1, 1937." That finding is amply supported by other facts stated in the Findings of Fact and I agree to it. That finding of fact establishes petitioner's ground for relief under section 722 (b) (4), I. R. C. But the establishment of a taxpayer's ground for relief gets him nowhere unless he is further able to establish "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of the excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period." See section 722 (a), I. R. C.

I do not think petitioner has met its burden of proof as to requirement (2) stated in the statute and recognized in *East Texas Motor Freight Lines* and *Lamar Creamery Co.* cases, both *supra*. It is true that the majority opinion has two findings of fact which read as follows:

If the petitioner had commenced business 2 years before it did so, it would have reached by the end of the base period an earning level of about $19,000 annually.

$18,000 would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, to-wit, the year 1941.

I find no supporting facts in the Findings of Fact which justify the two ultimate findings referred to above. Petitioner's actual excess profits net income for the year 1939 as shown by the Findings of Fact was $7,081.67. I see no findings of fact which would justify the finding of the majority that petitioner's earning level at the end of 1939 would have been "about $19,000" instead of this $7,081.67 if it had commenced

business 2 years before it did so. I am not at all convinced that such would have been the case.

The majority opinion refers to Regulations 112, section 35.722–3 (d). That regulation reads in part as follows:

The fact that income for the entire base period is to be reconstructed upon the basis of the level of normal operations actually attained during the base period or upon the basis of the level of normal operations which would have been reached had the business been commenced or changed two years earlier, does not necessarily mean that the highest level of earnings actually or constructively reached during the base period is to be ascribed to the entire base period. The earning level of business usually is fluctuating rather than constant. Normal earnings to be attributed to the taxpayer for the base period must follow such pattern. In determining such normal earnings regard may be had to the earnings cycle during the base period of other taxpayers engaged in similar businesses, of other members of an industry of which the taxpayer was a member, of such industry as a whole, and to relationships existing between the taxpayer's production, costs, sales, and profits during its years of normal operations and similar factors in the case of such other taxpayers or industry.

It seems to me that to support the two ultimate findings of fact which I have copied above, the majority opinion would have to make findings of fact along the lines of those which we made in *Lamar Creamery Co.*, *supra*, in the concluding paragraphs of our Findings of Fact in that case. Such findings of fact as should be made here in these respects should, of course, be suitable to petitioner's particular line of business. In the absence of such findings, how am I to know that "if the petitioner had commenced business 2 years before it did so, it would have reached by the end of the base period an earning level of about $19,000 annually"? Or how am I to know that "$18,000 would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, to-wit, the year 1941"? There is nothing in the Findings of Fact prepared as a basis for the majority opinion which satisfies me that petitioner has met its burden of proof in these respects.

I, therefore, respectfully record my dissent.

DISNEY, *J.*, dissenting: Though the petitioner, as basis for its qualification to seek relief under section 722 (b) (4), urged that it commenced business on February 1, 1937, and changed the character of its business, and adduced evidence in support of both contentions, the majority opinion appears to be that there was no change in character of business (except possibly in increase in capacity for production), and that none was necessary since the petitioner commenced business on February 1, 1937. It is stated that "The fact that Victory Glass

Company [the old company] was engaged in a similar, or even the same, kind of business does not change the fact that the petitioner commenced business during the base period, for its business was not that of the petitioner  *  *  *."

In my opinion, the majority errs in concluding that petitioner commenced business within the base period, within the intendment of section 722 (b) (4) of the Code. Petitioner was actually incorporated during such period, about January 29, 1937. But does this mean that it commenced business within the language of section 722 (b) (4)? Obviously incorporation is not equivalent to commencing business because business might not have been commenced until some time thereafter. In order to determine the meaning of the expression "the taxpayer  *  *  *  commenced business" regard must be had to the entire statutory scheme involved in section 722 and the excess profits tax law. The excess profits tax was laid upon "excess profits" which, roughly speaking, and as far as here pertinent, are determined by subtracting from the actual profits 95 per cent of the average profits for the base period years. In the case of a taxpayer with the normal experience during the base period years this is the general manner of computation. Some taxpayers, however, contend that they did not have the usual experience and, so far as we are here concerned, rely upon section 722 to so demonstrate. The essential general question therefore is: How to determine whether the experience is normal or abnormal during the base period years. It seems obvious that if the business involved has been in existence throughout the base period years, its profits throughout that period offer logically a prima facie showing of what is the profit norm for the base period. In short, we appear to be required to look at the business and not the taxpayer, and the mere fact that the taxpayer was incorporated some time during or immediately prior to the base period is material only so far as the fact of such incorporation may tend to indicate that its business experience is not normal because starting anew requires time to arrive at a normal status in the business; whereas the same would not be true of business already established.

Though it is true that the statute says  "*  *  *  the taxpayer commenced business  *  *  *;"  it also refers to the "normal operation  *  *  *  of *the business*" and not "normal operation  *  *  * of the *corporation*" (emphasis added); and the expression is "commenced business" not "commenced existence." Immediately thereafter we three times find further reference to "the business." In *Eveready Loan Co.*, 2 T. C. 1035, construing section 712 (a), we held that corporation being "in existence" did not mean the same as conducting of business. Though section 712 (a) is a part of the excess profits law, it is significant that Congress did not, in section 722 (b)

(4), say "in existence" as it did in section 712 (a). This suggests that Congress did not in section 722 (b) (4) intend that new corporate existence alone gives right to proceed further toward relief under section 722. On this point, in the Treasury Bulletin on section 722, pages 32–33, we note:

* * * The words "commenced business" do not have the same meaning as "in existence." Ordinarily, a corporation commences business when it starts the business operations for which it was organized; it comes into existence on the date of its incorporation.

* * * Mere organizational activities such as incorporation or the issuance of capital stock are not sufficient. It is necessary that the activities of a corporation be advanced to the extent necessary to establish clearly the nature of its regular business operations so that construction of its base period net income can be made without recourse to its post-1939 experience. * * *

A new corporation might well purchase or otherwise acquire outright a business which has had normal operation for many years and continued so to operate throughout the base period. There seems to me no logic in any appeal by such a corporation for relief under section 722 merely because as a corporate entity it is new during the base period year; for its business has an established norm. It would appear that such a corporation, in order to have any appeal under section 722 (b), would have to show change in the character of its business. There was here a new corporation, but an old business. The corporation though new had resulted from the financial condition of the old one, and was followed by the sale of some of its assets to the petitioner, and the donation (in the theory of the petitioner) to the petitioner of the value of certain property transferred to the petitioner as a contribution to capital. There was practically no change in the name and none in management. No break in the continuity of operations appears, between old corporation, receivership, and petitioner. In my opinion, the business here involved did not commence either during or immediately prior to the base period within the statutory phrase. It had commenced long before. It was continued without change in character throughout the base period years. In my view, this situation is not such as to justify relief under section 722 (b) (4) within any reasonable or even sympathetic interpretation of the statute. I realize that under the record before us petitioner was not "an acquiring corporation" within the language of section 740, from the old corporation; and I think that is immaterial. Section 740, as appears on its face, covers certain carefully delineated situations. It does not purport to define, limit or interpret the language "commenced business" in section 722 (b) (4). The inquiry here is not touched by section 740. In my opinion, petitioner here is not shown to have "commenced business" and certainly did

not commence "the business" with which section 722 (b) (4) is concerned and which four times it mentions, merely because, though actually taking over and continuing an existing business, its corporate existence commenced within the base period. It commenced, but it did not commence any business, for the business had already been commenced. For purposes of this statute I can not believe that "commenced business" means continuing an established business by a new corporation. I would, therefore, deny relief to the petitioner for failure to qualify under section 722 (b) (4) as a corporation commencing or changing the character of business, and I, therefore, respectfully dissent.