SPRINGFIELD PLYWOOD CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26178, 26179, 26180, 26181. Promulgated April 4, 1952.

*Wayne C. Gilbert, Esq.*, for the petitioner.
*Arthur N. Mindling, Esq.*, for the respondent.

22

OPINION.

*Issue 1.*

JOHNSON, *Judge:* To qualify under section 722[1] petitioner must prove that the tax computed without the benefit of section 722 results in an excessive and discriminatory tax and what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income.

It must also prove that it commenced business after the beginning of and during the base period since that is the factor upon which it bases its claim for relief under section 722 (b) (4), which states:

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, *commenced business* or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. * * * [Emphasis added.]

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that in the cases described in the last sentence of section 722 (b) (4), and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

It seems clear from the voluminous record in this case that although petitioner was technically in existence in 1939 when its articles of incorporation were filed, it had not in fact commenced business before December 31, 1939, as required by the statute.

Our recent decision in *Victory Glass, Inc.*, 17 T. C. 381, is not in point, that being a case where actual business operations were undertaken almost simultaneously from the time of incorporation. Here, the correspondence carried on between the incorporators clearly indicates the many changes in the capital structure prior to the organizational meeting in March 1940.

On that date the first meeting of subscribers to the stock of the company was held and the first board of directors elected and, later the same day, the first meeting of the directors was held, and the officers were elected.

The corporation then for the first time was in a position to transact any business. Petitioner did not actually commence the production of plywood until some time in July 1940.

We find that petitioner did not commence business during the base period and, accordingly, it does not qualify for relief under section 722 (b) (4).

## *Issue 2.*

Inasmuch as petitioner did not commence business until 1940 it must rely upon section 722 (c)[2] for any relief to which it may be entitled. Subsections (c) (1) and (2) relate to inadequacy of the excess profit credit because of the class of business in which the taxpayer was engaged. Petitioner concedes that its business was not within either of those classes. Subsection (3) relates to conditions existing with respect to a particular corporation. Petitioner contends, in the alternative, that its invested capital was abnormally low and therefore qualifies for relief under subsection (3). The specific contention of petitioner, as summarized by it on brief, is:

---

[2](a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

 * * * * * *

(c) INVESTED CAPITAL CORPORATIONS, ETC.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because—

 * * * * * * *

(3) the invested capital of the taxpayer is abnormally low.

In such case for the purposes of this subchapter, such taxpayer shall be considered to be entitled to use the excess profits credit based on income, using the constructive average base period net income determined under subsection (a). * * *

* * * that in a case where a corporation does not have sufficient invested capital to pay for its plant; where it has no working capital whatsoever and no capital to meet contingencies; where it is only able to start manufacturing and continue so to do because of intangible benefits in the shape of assured outlets through its stockholders, assured supply of logs through one of its stockholders, and a helping hand through another of its stockholders, it has an invested capital which is so low that it is not a fair basis for determining the excess profits credit and it has therefore an invested capital which is abnormally low within the meaning of section 722 (c) (3).

We agree with the conclusion in Bulletin on Section 722, p. 131, that the term "invested capital" in subsection (c) (3) means invested capital determined under the Code for excess profits tax purposes.

The Code contains no definition of the term "abnormally low" in the same subsection. The word "abnormal" is defined in Webster's New International Dictionary as meaning "Not conformed to rule or system; deviating from the type; anomalous; irregular." Section 35.722–4 of Regulations 112 provides that:

* * * If the type of business done by the taxpayer is not one in which invested capital is small but the invested capital of the taxpayer is *unusually low* because of peculiar conditions existing in its case, the excess profits credit based on invested capital will be considered an inadequate standard for determining excess profits. Thus, suppose that a corporation commenced business in 1941 with a leased plant valued at $1,000,000, but with equity invested capital and borrowed capital of only $40,000. If the invested capital of such company is unusually low relative to the size of its operations, its excess profits credit based on invested capital might be an inadequate standard for determining excess profits, and the taxpayer would be subject to an unreasonable tax burden if required to compute its excess profits tax under the invested capital method. [Emphasis added.]

Use of the indefinite term "unusually low" to describe the statutory term "abnormally low" adds nothing substantial to the problem.

The nearest approach to a definition in the Bulletin is a statement that: "The words 'abnormally low' indicate that there must be present some identifiable abnormality in the taxpayer's invested capital structure." Situations are then mentioned, because of which invested capital of the taxpayer "may be abnormally low." None of them are intended to be more than indications of an abnormally low invested capital. We agree with a statement of the Council that: "There must be a substantial departure from the normal or usual invested capital structure for the industry, and the taxpayer must demonstrate that such is true in its case for reasons peculiar to itself." Whether or not a taxpayer's invested capital is abnormally low is a factual question and no criteria can be prescribed as a yardstick. All of the evidence in each case must be considered in determining the ultimate fact.

In its applications for relief and petitions, petitioner claimed constructive average base period net income of $344,815.95 to be used as

a basis for excess profits credit in 1940, $407,897.64 in 1941 and $429,778.91 in each of the subsequent taxable years. On brief it asks us to find constructive average base period net income of $385,575.38, based upon constructive net income for it during the base period, and if we find the computation "at all out of line," and use the Veneer Company as a comparative, that we determine constructive average base period net income in the amount of $238,496.20. The maximum amount claimed as constructive average base period net income is about 87 per cent of the aggregate excess profits net income during the taxable years.

While in its application for relief petitioner compared its productive capacity, paid-in capital and earned surplus with the Veneer Company and asserted in a protest filed with the Internal Revenue Agent in Charge that the Veneer Company was "not necessarily a comparative," on brief it refers to the excess of its return on invested capital over the earnings of the Veneer Company as an indication that it was under-capitalized and says that the evidence offered by it "shows an abnormally low invested capital considering the petitioner and Washington Veneer Company" and that if it was normal in the industry as a whole to commence business without sufficient capital to pay the cost of a plant and working capital, the respondent should have established the fact.

The Veneer Company not only produced plywood, the business in which petitioner was engaged, but conducted lumbering and saw-milling operations, hence some of the capital of the Veneer Company was employed in activities other than those in which petitioner was engaged. A business of that sort would ordinarily require a higher paid-in capital than petitioner had, particularly in view of the fact it had its own sales organization and had to bear the full cost of administering its affairs. Any use of its capital as a comparative would require that proper weight be given for the difference in character of business in which it was engaged. Using it as a comparative for the limited purpose suggested by petitioner does not establish that petitioner's invested capital was abnormally low.

The average return on the invested capital of the Veneer Company for the years 1940 to 1944, inclusive, was 31.36 per cent, against 34.77 per cent for petitioner by treating the earnings for 5 months in 1940 as profits for a full year. Petitioner asserts that its average rate of return for that period was 39.41 per cent, or 8.05 per cent in excess of the Veneer Company. It does not explain the method it employed in arriving at the 39.41 figure, but it appears to have resulted from placing the earnings in 1940 on an annual basis. Of the invested capital of the Veneer Company, $450,000 was invested in stock of petitioner, which petitioner does not appear to have taken into account. Elimination of the amount results in average earnings of about 40

per cent on the capital actually used in its business, a ratio in excess of petitioner's earnings. The comparison indicates that petitioner's invested capital was abnormally high, rather than abnormally low, as contended by it. If other comparatives would tend to prove that petitioner's invested capital was abnormally low, the obligation to produce them was on petitioner, not the respondent.

Petitioner contends that the abnormalities relied upon by it enabled it to commence business on paid-in capital of $750,000, without which it would have had to have $1,250,000.

The amount of capital stock of petitioner was fixed at $750,000 rather than a greater amount, for the effect it would have on the rate of return per share to the stockholders. The lack of need for more capitalization is apparent. Petitioner had no sales, administrative or inventory problems. The Veneer Company and Booth-Kelly agreed to take all of its production. The Veneer Company administered the affairs of petitioner for a small fee, assumed credit risks [3] and advanced funds needed for operation, and Booth-Kelly carried most of its inventory of logs. Its borrowings, for purposes not established, were never large and the amounts were small in comparison with other items of invested capital, which consisted of paid-in capital and earnings.

Petitioner was a member of a closely knit organization. Its affairs were conducted more like a department of its majority stockholder, the Veneer Company, than a separate entity. Such situations may frequently exist where common control is present and cannot be said to be abnormal for an industry as a whole. Petitioner had earnings, after taxes, of about $472,000 at the close of 1944. In any event, earnings alone do not establish an abnormally low invested capital. Under the facts present here, we do not think petitioner has proved that its invested capital was abnormally low, and we so find.

Reviewed by the Special Division.

*Decisions will be entered for the respondent.*

---

[3] Practically none was involved.