OPINION. Hill, Judge: In this proceeding petitioner seeks relief from excess profits taxes for the years 1943 and 1944, under the provisions of the Internal Revenue Code, section 722 (a) and section 722 (b) (4)[1] and in the alternative under section 722 (b) (5). There is no question herein but that under section 712 the petitioner is entitled to have its excess profits credit computed either under section 713 based on income or under section 714 based on invested capital, whichever amount results in the lesser tax under chapter 2, subchapter E, of the Code. Here the petitioner had no net income during its base period years 1938 and 1939 and respondent computed and allowed, for the taxable years involved, an excess profits credit based on petitioner’s invested capital. There is no issue as to the amount so determined. The claimed relief may be granted only if petitioner meets the qualifying factors prescribed under the general rule provided in section 722 (a),namely, if it establishes (1) that the tax (computed without the benefit of section 722) is excessive and discriminatory, and (2) what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income; provided such amount gives rise to an excess profits credit which is greater than the credit otherwise available to petitioner. Under section 722 (b) (4) the petitioner’s tax (computed without the benefit of section 722) “shall be considered to be excessive and discriminatory” if petitioner establishes the further qualifying factors that its average base period net income is an inadequate standard of normal earnings because it commenced business during the base period and its average base period net income does not reflect the normal operation for the entire base period of the business. The petitioner did commence business in May 1938 which was during the base period. The facts of record and the testimony of witnesses establish to our satisfaction that petitioner’s operating losses, or zero average base period net income, do not reflect the normal operation for the entire base period of the business. This conclusion is supported by factual circumstances peculiar to petitioner’s getting into production. At the time petitioner commenced business there was a demand for the basic yeast products it proposed to process for sale to pharmaceutical companies. However, it immediately became necessary to make certain modifications of its products, particularly the concentrates, according to each prospective customer’s specifications, with the result that the entire 8 months of 1938 and most of 1939 were devoted to experimentation and development with attendant losses in materials and labor costs and in production for sale. Before the end of 1939 petitioner’s efforts began to bear fruit, that is, actual orders and substantial prospective orders. On the record, it is clear that petitioner’s business did not reach, by the end of 1939, the earning level which it would have reached if petitioner had commenced business 2 years before it did so. We conclude and have found as an ultimate fact that petitioner’s average base period net income is an inadequate standard of normal earnings. The petitioner has satisfied the requirements of section T22 (b) (4). Victory Glass, Inc., 17 T. C. 381. We have further concluded and found as an ultimate fact that the petitioner’s excess profits tax for the years involved, computed without the benefit of section 722, is excessive and discriminatory. This is based upon the petitioner’s having met the requirements of section 722 (b) (4) and our finding that the sum of $36,760 would be a fair and just amount, representing normal earnings to be used as a constructive average base period net income, which amount would give rise to an excess profits credit greater than the credit computed and allowed on the basis of petitioner’s invested capital. At the trial of this proceeding and with respect to the amount of the constructive earnings, the petitioner took the position that if it had commenced business 2 years before it did so, its 1939 level of business would have resulted in gross sales and a net profit in excess of the amounts found in our findings of fact; that its constructive earnings would have been approximately the same'amount for each of the years 1939, 1938, 1937, and 1936; and that petitioner is entitled to a constructive average base period net income in excess of the amount found in our findings of fact. The respondent contends that petitioner has failed to prove the claimed amount of constructive earnings or any other amount. The petitioner’s proposed reconstruction can not be accepted in toto for the reason that it is not fully supported by the facts and the credible testimony of witnesses. The petitioner’s proposed gross sales for 1939 are excessive because some of the assumed sales included therein by certain witnesses are not based on reasonable estimates bearing a demonstrable relation to the existing and/or probable market for petitioner’s products in that year. To the extent that the opinions of certain witnesses were not based upon the facts of record or were given without revealing basic evidential material, they lack a proper foundation, Avey Drilling Machine Co., 16 T. C. 1281, 1299, and have been disregarded. However, we are satisfied that the record herein does establish a proper basis for reconstruction and upon our own appraisal of the facts and testimony herein we have proceeded to find the sum which, in our judgment, would be a fair and just amount representing normal earnings to be used as a constructive average base period net income. In this connection we have procéeded on the premise that in the application of section 722 (b) (4) the “purpose of the 2-year push-back rule is to establish a figure which is assumed to be the maximum amount which would have been earned by the taxpayer in its last base period year, if it had commenced business 2 years before it did” and that the “assumed figure is then used as a point of departure in reconstructing the taxpayer’s average base period net income f using appropriate indices * * *) in order to determine his excess profits credit.” Del Mar Turf Club, 16 T. C. 749, 766. Also see Suburban Transportation System, 14 T. C. 823, 829. Further, it is recognized that section 722 of the Code does not prescribe an exact criteria for a reconstruction, see Danco Co., 14 T. C. 276, 288, but instead “it calls for a prediction and an estimate of what earnings would have been under assumed circumstances, an approximation where an absolute is not available and not expected,” Victory Glass, Inc., supra, at page 388. The Findings of Fact fully set forth the various factors establishing the assumed maximum amount of net profit of $50,178 which would have been earned by petitioner in its last base period year 1939, if it had commenced business 2 years before it did so. It would serve no useful purpose to review these factors here. We have used the reconstructed net profit for 1939 as the point of departure in back-casting those earnings over the prior base period years 1938,1937, and 1936, taking into consideration the business statistics placed in the record. The statistics on business in general and on disposable personal income disclose the year 1938 as one of general business recession. On the other hand, the statistics on all types of vitamin sales disclose a steadily expanding market for vitamin products throughout the base period years. Based upon a consideration of the whole record, we conclude that the sum of $36,760 would be a fair and just amount, representing normal earnings to be used as a constructive average base period net income for purposes of an excess profits tax based upon comparison of normal earnings and earnings during the excess profits tax years 1943 and 1944 involved in this proceeding. In view of the above conclusion it is not necessary to discuss petitioner’s alternative claim for relief under section 722 (b) (5). "With respect to the question of unused excess profits credit carryovers and carry-backs, which are matters for recomputation under Bule 50, the petition raised an issue only with regard to the correctness of respondent’s method of computing an unused excess profits credit adjustment from the year 1941, wherein respondent applied the “variable credit rule” provided for in the Bureau of Internal Bevenue Bulletin on Section 722 and Begulations 112, section 35.722-3 (d). That “rule” was approved in Nielson Lithographing Co., 19 T. C. 605, wherein we said: In other words, the variable credit “rule,” as stated above, may be considered when the last year of the base period reflects substantially less than a full level of normal operation, and after the application of the 2-year push-bach rule the question arises whether earnings had reached a normal level during the first and second excess profits tax taxable years. The rule provides that earnings during these 2 years of growth should not be reduced by an excess profits credit based upon a normal earning capacity. Failure to apply the variable credit “rule” in a situation such as we have here would result in a double benefit to the petitioner, and such was not intended by section 722. Also, see Radio Shack Corporation, 19 T. C. 756, 762. In the instant case the record establishes and we have found that at the end of 1939 the business of petitioner, after application of the 2-year push-back rule, was still in a state of continued development and growth and had not reached a normal level of production, sales, and earnings during 1940 and 1941. On the facts of record we are satisfied that this is an appropriate case for the application of the variable credit rule and for the purpose of computing the unused excess profit credit adjustment, if any, under Bule 50, we have found petitioner’s constructive average base period net income to be $29,000 for 1941. Beviewed by the Special Division. Decision will be entered under Rule 50. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. (a) General Rule. — In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, * * * (b) Taxpayers Using Average Earnings Method.- — The tax computed under this sub-chapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because— * * A * ■» * # (4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character' of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. * * *