BARDONS & OLIVER, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27522. Filed December 15, 1955.

*Frank E. Bubna, Esq.*, for the petitioner.
*William J. Stetter, Esq.*, for the respondent.

OPINION.

Raum, *Judge:* Petitioner seeks relief under section 722, Internal Revenue Code of 1939, with respect to its excess profits taxes for the years 1940–1942, and 1944–1945. It has abandoned all grounds other than those asserted under section 722 (b) (4).[1]

Various reasons are given for the relief claimed under (b) (4). Petitioner argues that it "commenced business" at or immediately prior to the beginning of the base period, since it was incorporated on December 31, 1935. However, the business had been in existence since 1891, first as a partnership until 1923 and then as a sole proprietorship until the date of incorporation. It does not appear from the facts before us that the incorporation brought about any change in the ownership or control of the enterprise. This was not a situation such as was present in *Victory Glass, Inc.,* 17 T. C. 381, where the old owners were superseded by creditors and by persons who invested fresh capital, and where the new owners gave direction to the enterprise in such manner that it was thought to be in fact as well as in theory an entirely different company. In the present case there was merely an incorporation of an existing enterprise without any consequences relevant to the application of section 722 flowing from such incorporation. Had the enterprise been incorporated 2 years earlier there is no proof that petitioner would have had a more fa-

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, * * * Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or

vorable earnings experience during the base period by reason of that fact. We reject petitioner's contention that it is entitled to relief because it "commenced" business at or immediately prior to the beginning of the base period.

On the other hand, we think that petitioner has shown that it qualifies for relief under (b) (4) by reason of a change in the character of the business. The principal product manufactured by petitioner's predecessors was a so-called plain turret lathe based on designs that had been in existence for many years. In 1929 an outstanding designer, Oskar Kylin, was hired to develop a new type of lathe, and he began to design a new line of lathes referred to as ram-type Universal turret lathes. The design and development of such a new line was not a matter of months; it involved years of work and experimentation. The "line" comprehended five different sizes, some of which were ready to go into production prior to the beginning of the base period, and some of which were not completed until after commencement of the base period.

These ram-type lathes were not merely an improved version of the old plain turret lathes, but, as our findings state, were an entirely new type of lathe. With this new product petitioner was able to meet competition far more successfully than had been the case when the enterprise was manufacturing and selling the old product. Our findings show the number of new-type lathes sold by petitioner and those sold by the entire industry. From these figures it appears that petitioner's immediate predecessor had only 1.6 per cent of total industry sales of this product in 1935, that petitioner had 5.7 per cent in 1936, 8 per cent in 1937, 6 per cent in 1938, and 9.5 per cent in 1939. Thus, except for 1938 which apparently was a slump year for the whole industry, petitioner experienced steady growth and improved its relative position in the industry during the base period. We are satisfied that petitioner attained its normal competitive position in the industry only during the last year of the base period, and that it is entitled to relief under section 722 (b) (4).

Closely related to this ground for relief is the argument that prior to the base period the distribution system of the business deteriorated since it lost dealer outlets and customers because of its inability to provide them with the new type of lathe; and that after the new line was established during the base period petitioner was able to and in fact did revitalize its network of dealerships. Whether this is an independent ground for relief is a matter that need not be decided since it is inextricably interwoven with the "new product" ground that we have approved, and in our reconstruction we have taken it into account.

Another ground alleged as a basis for relief is one based on "new management." We have examined the facts carefully in this connection, and do not find any such fundamental change in management as would justify relief on this ground.

Petitioner argues also that it is entitled to relief by reason of a difference in the ratio of nonborrowed capital to total capital. The facts do warrant the conclusion that as a result of increase in equity capital at the expense of borrowed capital there was a steady decrease in the interest burden during the base period. The abnormality occasioned by this consideration may be rectified in a reconstruction regardless of whether, standing alone, it would be an independent ground for relief, see *Southern California Edison Co.*, 19 T. C. 935, 996–997, and we have given effect to it in our reconstruction.

We do not find it necessary to discuss all of the various other points raised by both sides, but have taken them into account in our ultimate conclusion. The reconstruction presented by petitioner was based upon some hypotheses that we could not accept. Nevertheless, since we are persuaded by the record as a whole that relief is appropriate, our ultimate finding reflects our best judgment on the facts before us that petitioner is entitled to a constructive average base period net income of $20,000 in excess of its average base period net income computed without regard to section 722. Cf. *Radio Shack Corporation*, 19 T. C. 756.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*

