The Blum Folding Paper Box Co., Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 31911.   Filed January 13, 1956.

*Alex M. Hamburg, Esq.,* for the petitioner.
*Martin D. Cohen, Esq.,* for the respondent.

722

OPINION.

HARRON, *Judge:* Petitioner seeks excess profits tax relief under section 722 (b) (4), Internal Revenue Code of 1939, for the years 1942, 1943, and 1944. It claims that its average base period net income is an

inadequate standard of normal earnings because of changes which took place during the base period in its management, its products, and its capacity for production.

The facts, we think, clearly establish petitioner's qualification for relief under subsection (b) (4), both by reason of a change in management and a change in capacity for production. Whether there was also a sufficient change in the products manufactured by petitioner, that is, a change from the standard or stock boxes to specials, to afford independent grounds for relief, we need not decide. These changes were all so closely interrelated that they must be considered together in any reconstruction of normal base period earnings. See *Victory Glass, Inc.*, 17 T. C. 381, and *Bardons & Oliver, Inc.*, 25 T. C. 504.

The change in management came about when Aaron and Morris Blum withdrew from the business and a new slate of officers and directors was installed to operate the business. The new management took over about the end of July 1938, and immediately set about to modernize and expand the business. Their principal aim was to increase the production of specials to meet the growing demand for boxes of that type. This required additional floor space and equipment. The old management had been opposed to this change. As a consequence of the change, there was a steady increase in the percentage production of specials over several years. The figures for the month of March, which were selected as representative of the full year's operations for comparative purposes, show an increase of specials from 54.45 per cent of total production in 1938 to 69.79 per cent in 1941. The production of specials requires the services of a full-time artist to design the boxes, more and better machinery for cutting and printing (particularly for the color printing), and more skilled labor than had been employed theretofore.

Petitioner's capacity for production was substantially increased by the expansion and modernization of its plant. In September 1939, it enlarged its floor space approximately 55 per cent, and in each of the years 1939 and 1940 it purchased additional production equipment at a cost of over $17,000. Its average yearly purchases of equipment for the 3 next preceding years was less than $5,000. Compare in this respect *Farmers Creamery Co. of Fredericksburg, Va.*, 18 T. C. 241.

We do not consider it detrimental to petitioner's claims, as respondent argues, that it may have been required to make the changes which it made in order to maintain its competitive position in the industry. The statute imposes no conditions as to the underlying causes for the qualifying changes. It is the importance of the changes and their effect upon the taxpayer's independent business with which the statute is concerned.

The full effect of petitioner's base period changes, and particularly of the increase in plant capacity, was not realized by the end of the base period, so that the application of the push-back rule is required.

While, as we have said, petitioner's qualifications for relief because of base period changes have been established to our satisfaction, the evidence leaves considerable uncertainty as to what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income.

Petitioner contends that $50,492 is a fair and just amount representing normal base period earnings. To arrive at this figure petitioner increased its net sales for 1939 by approximately 20 per cent over actual 1939 net sales, under the 2-year push-back rule, and reconstructed its expenses for that year so as to yield a profit of approximately 7.88 per cent on such sales. The reconstructed 1939 profit is then adopted as the constructive average base period net income. Petitioner's actual average base period net income is $7,406.77. Its excess profits credits, computed under the invested capital method, are $12,177.84 for 1942, $13,110.30 for 1943, and $14,825.49 for 1944.

It is true, as respondent points out, that both the increase in net sales and the reconstructed expenses proposed by the petitioner, are based largely on conjecture. But as we have said, the statute calls for "a prediction and an estimate of what earnings would have been under assumed circumstances, an approximation when an absolute is not available and not expected." *Victory Glass, Inc., supra.*

The petitioner, in our opinion, has considerably overestimated its constructive base period earnings. After a careful evaluation of the evidence before us we have determined that $22,500 is a fair and just amount representing normal earnings to be used as a constructive average base period net income. While this amount is considerably greater than petitioner's profits for any of the prior years of its operations, we think that it is a conservative estimate of what might have been expected with a 2-year development of the base period changes.

There is no merit in respondent's argument that because petitioner's average base period net income was greater than its average for the preceding 18-year period, or for any interim period, it cannot claim that its business was depressed during the base period. Relief under subsection (b) (4) of section 722 is not predicated on a "depressed" base period income. That term is used only in subsections (2) and (3). Under subsection (b) (4), a taxpayer has first to meet the general requirements of subsection (a), that is, a taxpayer must show that the excess profits tax computed without the benefits of the relief provisions is "excessive and discriminatory." A taxpayer must show further that, as the result of having commenced business or changed the character of its business during or immediately prior to the base

period, its average base period net income does not reflect the normal operation of the entire base period and is, therefore, an "inadequate standard" of normal earnings. It must show further what would be a fair and just amount representing normal base period earnings. We conclude that the facts adequately demonstrate that petitioner qualifies for relief.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*