MEGOWEN-EDUCATOR FOOD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32046. Filed March 30, 1956.

*Alfred Gardner, Esq.*, for the petitioner.
*David Kittner, Esq.*, for the respondent.

## OPINION.

Rice, *Judge:* Petitioner's claims for excess profits tax relief are based on section 722 (b) (2), (b) (4), and (b) (5). It contends that its business was depressed in the base period because of the automobile accident involving one of its trucks, and the consequent bankruptcy proceedings, loss of customers, and increased operating costs; which, it contends, were "temporary economic circumstances" within the meaning of section 722 (b) (2). It further contends, under subsection (b) (4), that its average base period net income is an inadequate standard of normal earnings because of the fact that it began business during the base period and its average base period net income does not reflect normal operations for the entire base period. The claim under subsection (b) (5) is in the nature of an alternative claim to be considered only in the event that subsections (b) (2) and (b) (4) are held to be inapplicable.

The respondent concedes that petitioner was incorporated and began business in 1937 and is, therefore, entitled to have its average base period net income reconstructed under the push-back rule in accordance with subsection (b) (4) of section 722. The evidence is that in the reorganization under which petitioner was incorporated new capital was brought into the business and there were substantial changes in the common stock ownership and management. Cf. *Bardons & Oliver, Inc.*, 25 T. C. 504 (1955) ; *Victory Glass, Inc.*, 17 T. C. 381 (1951).

Respondent maintains, however, that the evidence affords no basis for a reconstruction that would result in an average base period net income sufficient to produce excess profits credits as great as those which have been allowed to petitioner under the invested capital method. These credits were $57,659.35 for 1943 (the total credit for 1943 with carryovers from 1941 and 1942 was $183,394.08), $52,674.33 for 1944, and $37,478.98 for 1945.

As to petitioner's subsection (b) (2) claim, respondent's position is that the evidence fails to show that petitioner's base period income was depressed because of temporary economic circumstances. He attributes petitioner's base period losses to insufficient working capital, intense competition in the industry, high cost of operations, and bad management. He maintains that none of these were "temporary economic factors unusual to the taxpayer" within the purview of subsection (b) (2). Respondent further contends that in any event the evidence of record affords no basis for a reconstruction of petitioner's base period earnings under base period conditions, either under subsection (b) (4) or subsection (b) (2).

Whether petitioner's base period income is an inadequate standard of normal earnings because of any of the events or circumstances de-

scribed in the several subsections of 722 (b) upon which petitioner relies, and whether the evidence affords a basis for a reconstruction of base period earnings which would result in credits greater than those available to petitioner under the invested capital method, are the questions which we must determine.

Petitioner was a new corporation with new investors and, hence, was entitled to relief as having been formed during the base period as governed by section 722 (b) (4), *Victory Glass, Inc., supra.* This is not a mere continuation in a different form, without change of ownership or management, as was *Bardons & Oliver, Inc., supra.* Respondent agreed that petitioner qualifies for relief under subsection (b) (4), and no issue remains in this respect. But, since petitioner commenced business in 1937, it could not have experienced any of the events which occurred previous to that time. The automobile accident, the damage suits, the loss of customers, the bankruptcy proceedings, all took place before petitioner ever came into existence. Cf. *Victory Glass, Inc., supra.* It, therefore, cannot qualify under subsection (b) (2).

Aside from qualification, petitioner relies on the history of its predecessor to justify its reconstruction. Even if, as a matter of evidence, we accept this approach and look to the record of the predecessor's experience and earnings, the record still fails to establish that by the end of the base period petitioner's earnings would have reached such a point that any reconstruction would give it a greater excess profits credit than that originally allowed it under the invested capital method.

Petitioner's predecessor, Johnson Educator Food Company, had a history of sporadic earnings. For the period 1920–1930, losses greatly exceeded earnings. There was net income in each year for the 1931–1935 period, the average being about $60,000 per year. The comparatively large profits in 1934 and 1935, amounting to $91,344.34 and $115,782.32, respectively, were due, in large part, to the popularity of Crax, which in 1935 accounted for approximately 40 per cent of total production.

The inroads of competitive products, such as Ritz, brought out by National Biscuit Company in 1935, began to be felt in 1936; and for the base period years the sale of Crax averaged only about 25 per cent of total sales. The total sales of the business decreased from $5,056,746.41 in 1935 to $4,767,858.31 in 1936, and to below $4,000,000 in each of the years 1937, 1938, and 1939. This decline in Crax sales was caused not so much by the reorganization of the internal difficulties of petitioner and its predecessors as by the introduction of competitive products by other manufacturers. The evidence does not indicate that at the end of the base period there was any likelihood that Crax would ever regain its former supremacy in the market.

Some of the reasons given for the reduction of the ratio of net income to sales of this business in the base period were competitive prices, increased cost of advertising, and the establishment of branch offices. It is not shown how or to what extent these conditions would have been affected by an additional 2 years' experience for petitioner.

One of the factors said to have contributed to high operating costs was the necessity for continuing operations at the Cambridge plant. Petitioner wanted to close out that plant and concentrate all of its operations at the Lowell plant. It undertook to sell the property but could not obtain a satisfactory offer during the base period. Again, there is no indication that this condition was in any way connected with any of the alleged 722 factors.

As we see it, petitioner's situation at the end of the base period, after more than 2 years of operations, shows but little, if any, signs of improvement. There is no convincing proof that its depressed condition would have been any better if it had commenced 2 years earlier or that the depressed income was to any appreciable extent attributable to any of the factors upon which petitioner bases his claims for relief.

In no event would the evidence of record support a reconstruction of base period earnings that would yield credits as great as those already available to petitioner under the invested capital method.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*