SUPERIOR VALVE AND FITTINGS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31164. Promulgated August 29, 1952.

*Sidney B. Gambill, Esq.*, for the petitioner.
*A. W. Dickinson, Esq.*, for the respondent.

934

OPINION.

Arundell, *Judge:* In this proceeding the petitioner seeks relief from excess profits taxes for the years 1941 to 1945, inclusive, by reason of the provisions of Internal Revenue Code section 722 (a) and 722 (b) (4).

The petitioner commenced business in April 1938, which is within the base period and which is one of the qualifying factors enumerated by the statute. *Rand Beverage Co.*, 18 T. C. 275. It is clear to us that base period net income for the 1 year and 9 months that the petitioner operated in that period does not reflect normal operating results for the entire base period. From the first period of operations—some nine months in 1938—to its first full year— 1939—the petitioner's business went from a deficit of some $19,000 to a break-even point. This, together with the testimony of witnesses, establishes to our satisfaction that the earning level of the petitioner's business would have been greater at the end of 1939 than it was if the petitioner had commenced business two years before it did. Section 722 (b) (4) ; *Victory Glass, Inc.*, 17 T. C. 381.

The respondent takes the position that the petitioner does not qualify for relief on the ground that by the end of the base period it

had reached the normal level of sales that it would have attained on two additional years of operation. We have set forth in the findings the figures on which this position is based. The principal figures are those showing the ratio of the petitioner's sales to the combined sales of commercial refrigerators and other commercial refrigeration equipment, by quarters, in 1938 and 1939. These figures show a steady progression of the ratio from the beginning of business in 1938 through the third quarter of 1939. From the third to the fourth quarters, the ratio sloughed off from .00610 per cent to .00582 per cent. This difference in ratio is only .00028 which we think is too small a difference to negative the petitioner's evidence on this point. We accordingly hold that the petitioner has met the qualifying factors of section 722 (b) (4).

The parties seem to be in agreement as to the method of reconstruction, if the petitioner is entitled to use a constructive average base period net income. They agree that in making a reconstruction, two steps are necessary and proper: (1) determination of the normal level of earnings for the year 1939; (2) reflecting back such normal earnings over the base period years by the application of a proper index. The determination of the amount of normal earnings for 1939 is the most serious difference between the parties.

The petitioner's evidence consists in part of a mathematical projection of the volume of petitioner's sales in the seven quarters that it was in business in 1938 and 1939. Other evidence consists of the testimony of a former employee of the petitioner, and of a present officer who was not connected with the petitioner in the base period. To the sales figures thus arrived at, the petitioner applies a profit ratio of 10 per cent and then applies to that figure a business index and produces a resultant figure of $35,489.29 as being a proper constructive average base period net income. The respondent, while not conceding that the right to reconstruction has been established, suggests that the proper starting point is to regard as normal sales an amount determined by applying to combined refrigeration sales for 1939 the petitioner's third quarter ratio of .00610 per cent. To this he then applies 3.65 per cent, which is the average ratio of earnings to sales of two corporations which the respondent says were competitors of the petitioner. To this figure, the respondent applies a business index and arrives at a constructive average base period net income of $7,800.

We cannot accept without qualification the proposed reconstruction of either party. The petitioner's mathematical projection has as its basis too short a period of time to reflect the normal fluctuations to be expected in business operations, particularly in the case of a new, competitive, and seasonal business. A former employee, while employed by the petitioner was not in a position of sufficient responsi-

bility in connection with sales to warrant giving full weight to his sales and profits predictions. The respondent's figures we think do not adequately reflect the rate of growth of the petitioner's business in relation to the refrigeration industry or the profit margin that could reasonably be anticipated. It is our conclusion on this point that the petitioner's reconstruction is too high and the respondent's is too low to reflect normal earnings to be used as the basis for an excess profits tax credit.

We have recognized, as provided by the respondent's regulations, that no exact criteria can be prescribed for a reconstruction under section 722, *Danco Co.*, 14 T. C. 276, 288, and that what that section calls for is a prediction and an estimate of what earnings would have been under assumed circumstances, an approximation where an absolute is not available and not expected. *Victory Glass, Inc., supra*, at p. 388. "The statute does not contemplate the determination of a figure that can be supported with mathematical exactness." *Danco Co.*, 17 T. C. 1493. In our appraisal of the evidence, we have given consideration, among other things, to the facts that the petitioner started business in 1938 which is recognized in all business statistics as a year of business recession, that it started from scratch with no backlog of orders, that it was in a competitive field, that it operated on credit for its materials, that it was managed by a man who was well and favorably known in the industry, and that despite its handicaps it moved steadily forward in its field of the commercial refrigeration industry. Upon consideration of the evidence offered by both parties, it is our conclusion that had the petitioner commenced business 2 years before it did, it would have reached an earning level of $20,000 by the end of the base period. We also think that the index represented by sales of members of the Commercial Refrigerator Manufacturers Association is a proper one to be applied for the purpose of back-casting 1939 earnings. See section 35.722–2, Regulations 112; Treasury Department Bulletin on Section 722, part V, subpart II (C) (4). We have set forth that index in the findings of fact. Its application to a 1939 earnings level of $20,000 produces a result of approximately $19,000 which we hold should be used as the petitioner's constructive average base period net income for the purpose of computing its excess profits credit for the years involved in this proceeding.

The petition in these proceedings alleges error on the part of the respondent in determining that the parts of 1943 and 1944 excess profits taxes, as to which payment was deferred, constitute deficiencies. The respondent's answer denies error in this respect. Consequently, the pleadings frame an issue as to whether the respondent properly determined the amounts of the deferred payments to be deficiencies. We have held that in such cases as we have here, where there has been

a deferment, and claims for relief have been rejected, the amount deferred constitutes a statutory deficiency. *Tribune Publishing Co.*, 17 T. C. 1228. On authority of that case, the issue framed by the pleadings is decided for the respondent.

After the above findings of fact and opinion were written but before promulgation thereof, counsel for the parties filed a supplemental stipulation of facts with respect to the issue as to the respondent's determination of deficiencies for the years 1943 and 1944. Three exhibits were filed with the supplemental stipulation. One is a copy of a letter dated June 4, 1948, written by an officer of the petitioner to the collector, with which was transmitted petitioner's check in the amount of $20,673.32 to cover the amounts of excess profits taxes as to which payment had been deferred ($11,512.71 for 1943 and $9,160.61 for 1944). The letter contained a request that the collector credit the $20,673.32 "to our company in your No. 9—Suspense Account, until our claims under Section 722 are decided." The second exhibit is a copy of the company's check, payable to the order of the collector. The third is a collector's certificate of assessments and payments with respect to the petitioner, which certificate shows the amounts of $12,591.04 and $8,082.28 (total $20,673.32) for the years 1943–1944 entered in Account 9–D.

In these proceedings the petitioner deferred the payment of a portion of its excess profits tax for each of the years 1943 and 1944. The amounts so deferred, we have held above, constitute deficiencies. In 1948 when the petitioner sent to the collector its check in an amount equal to the tax deferred for the 2 years, it requested that the amount transmitted be entered in the collector's suspense account and the collector did so. Apparently no assessment of the deferred amounts has been made. It would appear from the record that the amount sent to the collector in 1948 was sent by the petitioner and accepted by the collector as a deposit rather than as a payment of tax. Such deposits, it has been held, are payments in escrow and not payments of tax. *Rosenman* v. *United States*, 323 U. S. 658. In this posture of the proceedings, it must be held that the taxes deferred, which the respondent determined were deficiencies, were not paid prior to the date of the mailing of the respondent's notice of deficiencies, which notice also contained respondent's denial of the petitioner's claims under section 722. Accordingly, we have jurisdiction to redetermine the deficiencies determined by the respondent.

In view of the disposition that we had made of the issue as to relief under section 722, the issue as to the determination of deficiencies for 1943 and 1944 based on the deferments of excess profits tax payments for those years may not be of any importance in the final disposition of these proceedings. In any event, it is a matter that

can be determined in connection with the computations that must be made under Rule 50 of the rules of this Court.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*