CROSSFIELD PRODUCTS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33026. Promulgated April 20, 1953.

*Edward D. Robertson, Esq.*, for the petitioner.
*R. E. Maiden, Jr., Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The petitioner was organized in 1942 and was required to compute its excess profits tax credit based on invested capital. Section 712 (a), Internal Revenue Code. Petitioner alleged that the credit so computed was an inadequate standard for determining excess profits because of the existence of factors set forth in section 722 (c) (1), (2), and (3) of the Code.[1] The parties stipulated that petitioner meets the requirements of (1) and (3).

To establish eligibility under (2), petitioner relies entirely upon the branch of its business from the operation of which it realized commissions on sales of chain ladders shipped directly from the factory to the customer within its territory. Aside from such activity, petitioner's business consisted of sales of chain ladders out of its own stock and Dex-O-Tex. The statute requires that all of the activities of a taxpayer be considered in determining whether capital is an important income-producing factor of a classification of which it is a member. Regardless of the misconception of petitioner as to the proof required to come within subsection (c) (2), qualification under any one of the provisions of (c) is sufficient to entitle a taxpayer to full benefit by proper proof of other provisions of section 722. *Tin Processing Corporation*, 16 T. C. 713, 722; Regs. 112, sec. 35.722–4; Bulletin on Section 722, p. 130.

Where one or more qualifying factors exist under (c), the tax computed without the benefit of section 722 is considered to be excessive and discriminatory if the credit based on invested capital is an inadequate standard for determining excess profits. Counsel were in agreement at the hearing that the real difference between them was whether petitioner was entitled to an amount for constructive average base period net income which would result in a credit in excess of the amount computed by the invested capital method and allowed by the respondent.

---

[1] SEC 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(c) INVESTED CAPITAL CORPORATIONS, ETC.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because—

(1) the business of the taxpayer is of a class in which intangible assets not includible in invested capital under section 718 make important contributions to income,

(2) the business of the taxpayer is of a class in which capital is not an important income-producing factor, or

(3) the invested capital of the taxpayer is abnormally low.

The burden of petitioner was to establish a constructive average base period net income sufficient in amount to result in credits in excess of the credits of $1,652.36 and $2,162.25 allowed by the respondent for the respective taxable periods based on invested capital.

Petitioner requests us to find constructive average base period net income of $32,785.14. No useful purpose would be served by a detailed discussion of the method used by the petitioner in arriving at the amount. Proof was made that of total sales of $131,164.07 of Dex-O-Tex in 1941, $35,941.95 for marine purposes was nonwar demand. For reconstruction purposes, petitioner first includes in sales not resulting from economic conditions flowing from the war effort all of the 1941 sales of the product for land use and about 53 per cent of the sales for marine use. It assumes, without supporting evidence, that all land sales and 53 per cent of the marine sales of the material in 1940 were not the result of demands of the war. The figures so reached for 1941 are then used as 1937 sales and by assuming a certain percentage of increases in sales in 1938 and 1939 over the preceding year, total sales of $231,065.29 are determined for 1939. Using the gross income of all corporations as a basis, the sales thus reached are then reduced to $229,101.23, to which a profit of 10 per cent, asserted to be reasonable, is applied to compute average income of $22,910.12 during the entire base period from sales of Dex-O-Tex. The remainder of the amount of income claimed by petitioner, or $9,875.02, is for commissions on chain ladders and was reached by averaging commissions actually received during the taxable years.

The exclusive license for the sale of chain ladders in territory on the west coast was not obtained until December 1942. Sales from stock, for undisclosed reasons, ceased after the close of the fiscal year 1946 but some commissions were earned during the next 3 years. The history of sales indicates that they were war-induced In the absence of any proof that the ladders had a peacetime demand, we are not warranted in assuming that petitioner would have had profitable sales of the product during the base period if it had been in business during that time. Moreover, the use of actual post-1939 earnings violates the prohibition in section 722 (a) on the use of such data for reconstruction purposes. *Wisconsin Farmer Co.*, 14 T. C. 1021, 1031; *General Metalware Co.*, 17 T. C. 286, 293; *Danco Co.*, 14 T. C. 276, 288. Accordingly, no reason appears for including chain ladder sales in further consideration of petitioner's claim.

The method proposed by the petitioner to establish normal earnings from sales of Dex-O-Tex for reconstruction purposes is unacceptable.

While under section 722 (a) post-1939 events may be considered to the extent necessary to determine the nature of a section 722 (c) tax-

payer and the character of its business, the provision does not sanction the use of actual sales after December 31, 1939, in the manner employed by petitioner. *Danco Co., supra*, 288; *Danco Co.*, 17 T. C. 1493. The computation assumes factual conditions having no support in the evidence, among which are the amounts used for nonwar-induced sales, figures apparently used to reflect operations not influenced by the war economy, assumptions that such sales for 1941 are representative of what the sales would have been in 1937 if petitioner had been in business during that year and that sales in 1938 and 1939 would have increased by fixed percentages determined, in part, by an assumption flowing from an assumed condition, and the rate of income applied to sales.

Testimony of petitioner's president and general manager, an interested witness, that if petitioner had commenced business on December 31, 1937, sales of Dex-O-Tex in 1939 would have been $400,000 or $500,000 with a resulting profit of between $80,000 and $100,000 is obviously a gross exaggeration of what reasonably could have been expected and adds little, if anything, to the solution of the problem presented to us. *7-Up Fort Worth Co.*, 8 T. C. 52, 63; *Industrial Supplies, Inc.*, 18 T. C. 1067.

The respondent's position here is that petitioner has failed to establish normal base period earnings of an amount sufficient to result in credits in excess of the amounts allowed by him under the invested capital method. He contends that without evidence of sales and profits for any period of the industry in which petitioner would fall and comparable businesses, probable earnings petitioner would have had must be found in the financial results of operations of its predecessors and its own experience. He then points out that the predecessor corporations sustained net operating losses of about $67,500 to the close of 1941 and asserts that there is no evidence to warrant an assumption that petitioner could have made a better financial showing. Respondent regards the sales actually made in 1939 for marine use as a reasonable estimate of sales petitioner would have made and that sales for land use would not have been more than about $4,000 in excess of actual sales.

The product sold by petitioner was developed in England during the early thirties and by 1936 was being used in that country quite extensively for marine purposes. The original licensee in the United States devoted most of its efforts to the problem of obtaining the approval of the Federal Government for marine use of the material. Such approval was not received prior to 1939 and it does not appear whether it was ever obtained. The difficulties encountered in creating a market for the material in this country is indicated by the single sale made by the original licensee during the year it was in existence. Sales tripled in 1939 under the management of the second assignee

of the license and part of its loss is attributable to the unprofitable installation work on the S. S. *America*. The sales during the taxable years were for war work and were so limited, primarily because of restrictions placed upon the use of natural rubber, the foundation ingredient of the product. That there was sale for the product without the influence of a war economy is established by the evidence. Short supply and governmental restrictions on the use of natural rubber during actual war years restricted normal operations of petitioner's business. Conditions created by the war, instead of accelerating sales, hampered normal progress of the business.

The regulations recognize that a section 722 (c) taxpayer is entitled to the benefit of a development period and that the normal base period years may not be a normal period for some classes of business. Regs. 112, sec. 35.722–4.

Rejection of the reconstruction proposed by petitioner does not prevent the allowance of some relief if warranted by the record and within the provisions contained in section 722 (a). The statute does not require that the amount determined be mathematically accurate. *Danco Co.*, 17 T. C. 1493. The nature of the question requires some estimate of earnings on assumed circumstances, and practical judgment. *Victory Glass, Inc.*, 17 T. C. 381; *Superior Valve & Fittings Co.*, 18 T. C. 931. The statutory direction is only the determination of a fair and just amount to be used as a constructive average base period net income in connection with which we may take into account the nature of petitioner and the character of its business.

The problem with which we are confronted requires an assumption that the taxpayer was carrying on during the base period the activities it was conducting during the taxable years, adjusted, of course, for any difference of conditions, and the results it would have had during the assumed period may not in all cases be reflected in the operations of predecessors engaged in the sale of the same product. The broad terms used by Congress in authorizing consideration of post-1939 events to determine the nature of a 722 (c) taxpayer and the character of its business contemplates that its general business policies be taken into account. The regulations properly recognize that the experience of a predecessor of the business is only a factor to be considered. Sec. 35.722–4.

The selling activities of the first licensee of Dex-O-Tex were devoted almost exclusively to marine use of the product. Petitioner's policy was to promote sales for land use and petitioner devoted more of its effort in that market than its predecessors. Respondent recognizes that if petitioner had been conducting its business in 1939, sales for land use in that year would have exceeded the actual sales of its predecessor although he contends the excess would not have been more than $4,000. The estimate is too conservative.

Land sales actually increased about 400 per cent in 1939 over 1938 without the benefit of a special plan to promote sales in that field. Until some time in 1939, natural rubber was available in quantities sufficient for all requirements in the production of Dex-O-Tex. It appears evident to us that if petitioner had been in business during the entire base period its sales of Dex-O-Tex for land use would have reached a volume sufficiently in excess of actual sales of its predecessor to result in a return of income from such operations.

From a consideration of the nature and character of the business of petitioner, related to the base period, its administrative policies in comparison with those of its predecessors during that time, potential demand for Dex-O-Tex, availability of the basic ingredient for producing its product, the experience of its predecessors, adjusted to the management of petitioner under other policies, and other factors present in the evidence, we conclude that $5,000 is a fair and just amount to be used as constructive average base period net income.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*