OPINION. Hill, Judge: The principal question in issue here is whether the petitioner is entitled under the provisions of section 722 (b) (4)[1] to a greater average base period net income and consequently a greater excess profits credit for the years involved than that allowed by the respondent. The petitioner contends, and the respondent agrees, that the petitioner is entitled to relief under section 722 (b) (4) by reason of the changes in character of its business brought about by the introduction of Article No. 241, a new product, and the establishment of three branch warehouses for the distribution of petitioner’s products during the base period. The petitioner has undertaken to establish by several computations that its constructive average base period net income should be $220,949. However, we are unable to accept the petitioner’s reconstruction for the reason that the evidence considered as a whole fails to support the assumptions on which the petitioner’s reconstructed average base period net income is based. For example, the index used by the petitioner to backcast warehouse and Article No. 241 sales had little or no relation to the business of the petitioner and could not be accepted for the purpose for which it was used. In addition to this, the petitioner’s method of using both a sales and an earnings index is objectionable, particularly in the instant case where the two indexes relied upon are so contradictory as to cancel each other in application. It would serve no purpose to attempt to discuss each separate item of petitioner’s reconstruction nor the methods used to substantiate its figures for sales and expenses. The proposed computations, which are optimistic in the extreme, involved various business indexes, mathematical and statistical formulae, and the testimony of expert witnesses. Likewise, it would be futile to attempt to reconcile the respondent’s position herein with the reconstructed average base period net income contended for by the petitioner or for that matter with the amount actually allowed the petitioner by the respondent. Suffice it to say, that the respondent’s many arguments have been considered and accorded the weight to which their respective validity entitles them. We have undertaken to evaluate the evidence and the arguments presented by the parties and to apply the relief provisions before us as fairly and accurately as possible. To our satisfaction the record herein does establish a proper basis for reconstruction. Our own appraisal of the facts and the testimony of the parties herein has led us to a sum which, in our judgment, is a fair and just amount to be used as a constructive average base period net income for the petitioner. The purpose of the 2-year push-back rule is to establish a figure assumed to be the level of earnings which would have been reached by the petitioner in its last base period year if the changes in character entitling it to relief had occurred 2 years before they actually did. We have used the assumed figure as a point of departure and backcast the 1939 earnings of the petitioner through the base period years, using as a relative criterion the business statistics placed in the record by the parties. Our Findings of Fact fully set forth the various factors considered. When, as here, the evidence and record fail to support the computations submitted by both parties as a reconstructed average base period net income, this Court may, after an examination of all the evidence, proceed to a reconstruction which is supported by the facts. Superior Valve & Fittings Co., 18 T. C. 931; Radio Shack Corporation, 19 T. C. 756. In doing this we recognize that section 722 of the Code does not prescribe an exact criterion for reconstruction and that a reconstruction must, to some extent, be based upon hypothesis and conjecture, and approximation, in short, where an absolute is not only not available but impossible of determination. The record as a whole supports to our satisfaction the finding that the sum of $151,948 is a fair and just amount to be used as a constructive average base period net income for the petitioner. The record also establishes and we have found as a fact that at the end of 1939 the business of the petitioner, after application of the 2-year push-back rule, was still in a state of continued growth and had not reached a normal level of sales and earnings. We, therefore, sustain the respondent in his determination that the variable credit rule is properly applicable to this case and hold, in accordance with our findings of fact, that.$116,088 for the fiscal year ended August 31, 1941, and $132,742 for the fiscal year ended August 31, 1942, are fair and just amounts representing normal earnings to be used as the petitioner’s constructive average base period net income for those years. Reviewed by the Special Division. Decision will be entered wader Rule 50. SBC. 722. GENERAL RELIEE — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. (b) Taxpayers using Average Earnings Method. — Tbe tax computed under this sub-chapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because — ■ ******* (4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term “change in the character of the business” includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor .engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change qp Pecember 1939, in the character of the business, * ♦ *