MUTUAL SHOE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35506.   Filed December 14, 1955.

*C. J. Batter, Esq.*, for the petitioner.
*A. Russell Beazley, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* All the facts have been stipulated and are herein incorporated by this reference.

Petitioner is a corporation organized under the laws of the State of Massachusetts with its principal office at Marlboro, Massachusetts. The income tax returns, excess profits tax returns, and declared value excess-profits tax returns for the years involved were filed with the collector of internal revenue for the district of Massachusetts at Boston, Massachusetts.   Claims for relief under section 722 of the 1939 Internal Revenue Code for the same years were filed with the Commissioner of Internal Revenue at Washington, D. C.   On April 10, 1951, the respondent notified petitioner that its application for relief had been allowed in part, such allowance being based upon a construc-

tive average base period net income of $22,360. There is no dispute about the relief allowed to petitioner under section 722.

The credit allowed for income tax purposes under section 26 (e), in an amount equal to the adjusted excess profits net income, is determined with the use of the constructive average base period net income allowed the petitioner under section 722 of the Internal Revenue Code of 1939.

The only question is the interpretation of section 26 (e). The portion of that section that is here applicable allows a corporation credit for income tax purposes in "an amount equal to its adjusted excess-profits net income (as defined in section 710 (b))." Turning to section 710 (b), we find the term "adjusted excess profits net income" means the excess profits net income (as defined in section 711) less the excess profits credit and other items which do not concern us here. The excess profits credit is allowed by section 712, which defines the credit as the amount computed under section 713 or section 714, whichever is applicable. Section 713 bases the excess profits credit on tax-payer's average base period net income, while under section 714, the credit is based on invested capital. Here, petitioner computed its excess profits credit for the years involved under section 714.

Where, as here, relief is granted under section 722, that section provides that taxpayer's excess profits tax shall be determined by using a constructive average base period net income instead of the average base period net income otherwise determined. This means that the excess profits credit is computed by using the constructive average base period net income instead of the average base period net income as provided in section 713. If a taxpayer has based his excess profits credit on invested capital under section 714, he is considered, under section 722 (c), as entitled to use an excess profits credit based on income, using the constructive average base period net income for that purpose.

Petitioner, having obtained partial relief under section 722 with respect to the years here involved, now argues that it is entitled to make a computation of the credit for income tax purposes under section 26 (e) without reference to the constructive average base period net income used in obtaining such relief. Respondent contends that this constructive income, by increasing the excess profits tax credit, decreased petitioner's adjusted excess profits net income for each of the years involved. Since section 26 (e) allows as a credit an amount equal to the adjusted excess profits net income, such credit is decreased as well. It is this decrease in the credit under section 26 (e) that gives rise to the income tax deficiencies here disputed.

We believe that the respondent's interpretation of section 26 (e) is correct. Congress, in enacting section 26 (e), sought to prevent the same portions of a corporation's income from being subjected to

both the income tax and the excess profits tax. It was intended that this double burden be prevented through the device of a credit against net income. Such intent on the part of Congress is clearly evidenced in the following House Committee Report on the Revenue Bill of 1942:

Under the present law, the excess-profits tax is computed before the normal tax and surtax, being allowed as a deduction in determining the bases to which those taxes apply. Thus, the portion of the adjusted excess-profits net income not taken by the excess-profits tax is subjected to the normal tax and surtax.

The bill changes this method of determining the tax base by dividing the net income into two portions, one of which is subject to excess-profits tax alone, and the other of which is subject only to normal tax and surtax. Instead of deducting the excess-profits tax itself in determining the normal tax and surtax bases, the bill deducts, through the form of a credit against net income, the adjusted excess-profits net income, the base upon which the excess-profits tax is computed. [Ways and Means Committee Report, H. Rept. No. 2333, 77th Cong., 1st Sess., 1942–2 C. B. 388.]

No violence is done to the Congressional intent if the credit under section 26 (e) is made to depend upon the constructive average base period net income determined under section 722. This constructive income results, eventually, in a smaller tax base upon which the excess profits tax is actually computed. This in turn increases the tax base upon which the income tax will be computed, thereby increasing such tax.

The argument advanced by petitioner leads to an exemption of a portion of its income from any income tax. It files an excess profits tax return and bases the tax upon its actual adjusted excess profits net income. Thereafter, upon obtaining relief under section 722, the corporation determines a constructive average base period net income which results in a smaller adjusted excess profits net income, and consequently the corporation ends up with a reduced excess profits tax liability. If at the same time the corporation's credit under section 26 (e) is not reduced to the new adjusted excess profits net income, but remains at the old and larger amount, the corporation would be receiving a credit for income tax purposes based upon an amount that was ignored in determining the final excess profits tax liability. The consequence of this would be to free a portion of the corporation's income from both the excess profits tax and the income tax. Such a result is clearly unwarranted. It is inherent in petitioner's argument that relief from the excess profits tax under section 722 means relief from the income tax as well. We see nothing in the statutes involved, nor in the legislative history, to justify such an interpretation.

A further indication of the Congressional intent that a decrease in excess profits taxes through the relief provisions of section 722 will work an increase in income tax liability is revealed in the Senate Committee Report on section 206 of the Revenue Bill of 1943, which added

section 722 (g) to the Code. This section provided for the publicity of certain information. The Committee stated:

This compilation shall contain the name and address of each taxpayer to which relief has been allowed, the business in which the taxpayer is engaged, the amount of the excess profits credit of the taxpayer before such allowance, the increase in such excess profits credit claimed and the increase in such credit allowed, *and the amount of the gross reduction in the excess-profits tax and of the gross increase in the tax under Chapter 1, which results from the operation of section 722.* * * * [Emphasis supplied. S. Rept. No. 627, 78th Cong., 1st Sess., 1944 C. B. 1027.]

There have been no cases on this exact issue. Petitioner calls our attention to *Uni-Term Stevedoring Co.*, 3 T. C. 917, and to *West End Furniture Co.*, 6 T. C. 557, in support of its argument. In *Uni-Term Stevedoring Co.*, *supra*, the question before the Court was one of jurisdiction and it was not necessary to decide the issue which is before us here. In *West End Furniture Co.*, *supra*, petitioner reported income on the installment basis, but for excess profits tax purposes elected under section 736 (a) to compute its income on the accrual basis. Petitioner then contended that it was entitled to a credit under section 26 (e) in the amount of adjusted excess profits net income which would result from the income reported on an installment basis, notwithstanding its election to compute excess profits tax liability on an accrual basis. Respondent argued that, since the 80 per cent limitation of section 710 (a) eliminated any excess profits tax liability whatever, no credit should be allowed under section 26 (e) because petitioner had no income subject to excess profits tax. We held that the credit under section 26 (e) was an amount equal to the adjusted excess profits net income computed on the accrual basis by virtue of the election under section 736 (a). We held further that under the sections of the statute and the regulations there involved, the credit should be allowed even though the 80 per cent limitation prevented any imposition of an excess profits tax. Neither of those cases is controlling here.

While the issue before us is one of first impression, we have recently considered a problem that we believe is analogous. In *Morrisdale Coal Mining Co.*, 21 T. C. 393, the Commissioner, subsequent to a grant of relief to the taxpayer under section 721 (abnormalities in income in the taxable period), decreased the taxpayer's excess profits tax and asserted a deficiency in income tax due to the effect of such decrease on the credit allowable under section 26 (e). We held that such action by the Commissioner was clearly within the statutory mandate. A similar problem arose in *Advance Aluminum Cast. Corp.* v. *Commissioner*, 168 F. 2d 353, 355, and the court's analysis is pertinent here:

By reducing its excess profits tax, by electing to take advantage of the option granted by Congress under Section 736 (a), it was able, as Congress intended,

to reduce its excess profits tax income and its excess profits tax thereon, but we read nothing in the statute that would justify an implication that Congress intended at the same time to exempt from income taxes that portion of income eliminated from excess profits tax liability. Indeed, the whole purport of the legislation is to the contrary, the intent having been at all times that the net income for income tax purposes should be decreased only by the amount of the excess profits tax income in order to avoid double taxation of the same amount. It would be a violent and unjustified construction to conclude that petitioner could reduce its excess profits tax under the option granted by Congress and at the same time deduct from its taxable net income an excess profits tax income credit nowhere in existence, calculated upon the installment basis. * * * To permit this would ignore the essential fact that when petitioner elected to report its adjusted excess profits net income on the accrual basis under Section 736 (a) it thereby automatically established the credit which it might deduct from its taxable net income for income tax purposes.

It is true that both these cases arose under excess profits tax relief sections other than section 722, which is the section concerning us here. But we can detect no material difference in theory between those cases and the one before us. We believe the rationale of those cases supports respondent's arguments here.

We hold, therefore, that where a constructive average base period net income is determined under the excess profits tax relief provisions of section 722, such constructive income should also go into the computation of the credit for income tax purposes under section 26 (e) of the 1939 Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered for the respondent.*