**MUTUAL SHOE COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 5108.**

United States Court of Appeals First Circuit.

Heard Oct. 3, 1956.
Decided Nov. 9, 1956.

&#9906;695

Carl J. Batter, Washington, D. C., for petitioner.

Harry Marselli, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Petitioner here seeks review of a decision of the Tax Court of the United States entered December 6, 1955, determining that there are deficiencies in the income tax of Mutual Shoe Company for its fiscal years ending May 31, 1943, 1944, and 1945. We think the Tax Court's decision was pretty clearly right.

Mutual Shoe Company duly filed with the Collector for the District of Massachusetts its income and excess profits tax returns for the fiscal years 1943, 1944, and 1945. The taxpayer also filed with the Commissioner of Internal Revenue, Washington, D. C., its applications for excess profits tax relief under § 722 of the Internal Revenue Code of 1939, as amended 26 U.S.C.A. Excess Profits Taxes, § 722. Under date of April 10, 1951, the Commissioner notified the taxpayer that its applications for relief under § 722 had been allowed in part, such allowances being based upon "a constructive average base period net income", as determined by the Commissioner, of $22,360.00 for each of the taxpayer's fiscal years ending May 31, 1943, 1944, and 1945. By the same notice the Commissioner advised the taxpayer that, in accordance with such partial allowance, the Commissioner's determination of the taxpayer's excess profits tax liabilities for the three tax years in question disclosed overassessments of excess profits tax in the respective amounts of $4,298.06, $3,797.05, and $2,477.73. In the same letter the Commissioner also advised the taxpayer that determination of its income tax liability for those taxable years disclosed deficiencies in the respective amounts of $2,008.52, $1,781.23, and $1,535.90, or an aggregate income tax deficiency of $5,325.65. From the foregoing notice the taxpayer filed a petition in the Tax Court wherein it sought a redetermination of the above-mentioned income tax deficiencies.

The only matter in controversy before the Tax Court was as to the amount properly allowable to the taxpayer as a credit under § 26(e) of the Code of 1939, as amended 26 U.S.C.A. Int.Rev.Acts, pp. 172, 461. The parties stipulated that, if it should be held that the credit under § 26(e) is the adjusted excess profits net income determined without consideration of the partial allowance or relief from the excess profits tax under § 722, in that event there are no deficiencies in income tax, whereas, if it should be held that the credit under § 26(e) is the adjusted excess profits net income after the allowance under § 722, then the income tax deficiencies asserted by the Commissioner are correct. The Tax Court upheld the position of the Commissioner and, accordingly, entered its decision redetermining the deficiencies for the taxable years in the same amounts as had been determined originally by the Commissioner. 25 T.C. 477.

Under the amended Internal Revenue Code, as it stood during the tax years now in question, corporations were subject to a normal tax and surtax, and in addition were subject to an excess profits tax. Section 26(e) of Chapter 1 provided that corporations were to be allowed a certain credit in the determination of their income tax liability; that is, any corporation subject to the excess profits tax imposed by subchapter E of Chapter 2 was to be allowed a credit in "an amount equal to its adjusted excess-profits net income (as defined in section 710(b))." 56 Stat. 806.

This phrase, "adjusted excess profits net income" appeared also in § 710(a), 26 U.S.C.A. Excess Profits Taxes, § 710 (a), as the base upon which the excess profits tax was imposed. The definition of "adjusted excess profits net income"

as found in § 710(b) contained a further cross-reference; the term was defined as meaning the "excess profits net income (as defined in section 711)", minus certain adjustments, including a deduction of the amount of "excess profits credit allowed under section 712". Referring then to § 711, 26 U.S.C.A. Excess Profits Taxes, § 711, we see that "excess profits net income" meant "the normal-tax net income, as defined in section 13 (a) (2)," with certain enumerated deductions. Section 711 also contained the provision that, if the excess profits credit (which was a deduction allowed under § 710(b) in determining the adjusted excess profits net income) was computed under § 713, 26 U.S.C.A. Excess Profits Taxes, § 713 (which was the case here), then in "computing such normal-tax net income" the credit provided in § 26(e) should not be allowed.

In other words, in computing the regular income taxes imposed by Chapter 1, a deduction was allowed in § 26(e) in the amount of the adjusted excess profits net income, which was subjected to the excess profits tax imposed in the now repealed subchapter E of Chapter 2. But in computing the excess profits tax, a deduction was allowed of the "excess profits credit" which was the statutory measure of normal profits exempted from the excess profits tax. And though the "normal-tax net income" was used as a factor in computing the adjusted excess profits net income, obviously that normal tax net income, as used for this purpose, should not include the credit or deduction in § 26(e) in the amount of the adjusted excess profits net income—otherwise the provisions would result in an insoluble circuity and in an overlapping double deduction.

Referring back to the definition in § 710(b) of the term "adjusted excess profits net income", we saw that in computing this item a deduction was allowed in the amount of "the excess profits credit allowed under section 712". Going then to § 712, it appears that this "excess profits credit"—the measure of normal profits not subject to the excess profits

tax—might be computed by the average earnings method in § 713 (as in this case), or by the invested capital method in § 714, 26 U.S.C.A. Excess Profits Taxes, § 714. Section 713 contained elaborate provisions for determining the "average base period net income" which was used in the section to fix the "excess profits credit".

As originally enacted, the Excess Profits Tax Act of 1940 contained a short and simple § 722, 54 Stat. 986, which merely authorized the Commissioner "to make such adjustments as may be necessary to adjust abnormalities affecting income or capital, and his decision shall be subject to review by the United States Board of Tax Appeals." On March 7, 1941, 55 Stat. 23, Congress amended § 722 to provide in more elaborate detail for the adjustment of abnormal base period net income. As thus amended it was provided that, if the taxpayer should establish "the amount that would have been its average base period net income" but for certain enumerated abnormal factors, then the amount so established "shall be considered as the average base period net income of the taxpayer for the purposes of this subchapter." Section 722 was further amended on October 21, 1942, 56 Stat. 914–16. Though the 1942 amendatory language is different, we see no indication that the Congress intended thereby any difference in result so far as the issue now before us is concerned. Under § 722 as thus amended it was provided that, in the case of a taxpayer entitled to figure its excess profits credit on the basis of income (§ 713), "if its average base period net income is an inadequate standard of normal earnings" because of certain enumerated abnormal factors, then the taxpayer should be entitled, for the purpose of computing its excess profits tax, to use as a deduction an excess profits credit based upon a so-called "constructive average base period net income" instead of upon an "average base period net income" computed in the normal manner. The utilization of such a "constructive average base period net income" for purposes of the abnormality relief afford-

ed under § 722 would thus result in an increase in the taxpayer's "excess profits credit" allowed under § 712, and thus in a decrease in the taxpayer's "adjusted excess profits net income", as defined in § 710(b), and, correspondingly, a decrease in the taxpayer's "adjusted excess profits net income," upon which the excess profits tax was actually imposed under § 710(a).

From the foregoing it is apparent how closely the Congress had intermeshed the provisions, and reciprocal credits, applicable to the income taxes imposed in Chapter 1 and the excess profits tax imposed in subchapter E of Chapter 2. This makes it all the more difficult to grasp the force of the taxpayer's arguments in the case at bar.

Summarizing petitioner's contentions, it is asserted that the taxpayer is entitled to compute its credit under § 26(e) in entire disregard of the relief eventually allowed to it under § 722, as though the two taxes were entirely separate and unrelated and as though § 722 were not an integral part of the Excess Profits Tax Act of 1940, as amended. The assertion is based primarily on the first sentence of § 26(e), dealing with the computation of income taxes imposed upon corporations by Chapter 1, and providing a credit in the case of any corporation subject to the excess profits tax in "an amount equal to its adjusted excess-profits net income (as defined in section 710(b))." Petitioner maintains that the clause "(as defined in section 710(b))" is restrictive and therefore limits the amount of the credit allowance under § 26(e); that if Congress had intended to bring § 722 into play at this point it would have revised § 26(e) to read "(as defined in section 710(b) *or as adjusted by reason of the application of section 722*)." We think that petitioner's attempt to bolster this argument by a sectional analysis of the statute does little more than to restate its contention grounded on the absence of any explicit language in § 26(e) referring to the relief provisions of § 722.

■ While it is true that the relief provisions of § 722 are not specifically incorporated into § 26(e), that fact is hardly controlling, or even significant. We must read the statute as an integrated whole and in the light of its legislative history.

■ It appears clearly enough that Congress intended to divide all corporate income into two portions, one portion to be taxed under the excess profits provisions of subchapter E of Chapter 2, and the other portion to be taxed under the normal tax and surtax provisions of Chapter 1.

The Ways and Means Committee of the House of Representatives stated as follows during the course of its summary on the Revenue Bill of 1942 (H.Rep.No. 2333, 77th Cong., 2d Sess. 18 (1942-2 Cum.Bull. 372, 388)):

"1. *Change in the Base for Corporate Tax.*

Under the present law, the excess-profits tax is computed before the normal tax and surtax, being allowed as a deduction in determining the bases to which those taxes apply. Thus, the portion of the adjusted excess-profits net income not taken by the excess-profits tax is subjected to the normal tax and surtax.

The bill changes this method of determining the tax base by dividing the net income into two portions, one of which is subject to excess-profits tax alone, and the other of which is subject only to normal tax and surtax. Instead of deducting the excess-profits tax itself in determining the normal tax and surtax bases, the bill deducts, through the form of a credit against net income, the adjusted excess-profits net income, the base upon which the excess-profits tax is computed."

Further support for the Commissioner's position is found in the legislative history of the Revenue Act of 1943 which added a new subsection (g) to § 722, 58 Stat. 55. The provision was as follows:

"(g) The Commissioner shall compile for each fiscal year beginning after June 30, 1941, by internal reve-

nue districts, and alphabetically arranged, all cases in which relief has been allowed during such year under the provisions of this section by the Commissioner and by The Tax Court of the United States, as the case may be. Such compilation shall contain the name and address of each taxpayer to which relief has been so allowed, the business in which the taxpayer is engaged, the amount of the excess profits credit before such allowance, the increase in such credit claimed, the increase in such credit allowed, and the amount of the gross reduction in the tax under this subchapter *and of the gross increase in the tax under Chapter 1, which results from the operation of this section.* In the case of relief allowed by The Tax Court of the United States, the Commissioner shall also set forth the data previously reported under this subsection with respect to relief previously allowed in such case by the Commissioner. Such compilation shall be published in the Federal Register." (Emphasis supplied.)

From the foregoing provision it is inescapable that Congress intended that the published reports should reflect whatever increase in income tax under Chapter 1 would result from the granting of § 722 relief as to the excess profits tax, an increase which could only come about from an adjustment of the credit in § 26 (e). See S.Rep.No.627, 78th Cong., 1st Sess. 74 (1944 Cum.Bull. 1027).

■ The pertinent provisions of the regulations, § 29.26–4 of Treas.Reg. 111, as amended, fortify the position taken by the Commissioner. If the matter were otherwise doubtful, we think that the courts would have to sustain these provisions of the regulations, constituting as they do a contemporaneous interpretation of the Act by those charged with its administration, an interpretation not inherently unreasonable nor plainly inconsistent with explicit provisions of law. See Commissioner v. South Texas Lum-

ber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.

■ In addition to the foregoing, we think that a compelling consideration in the Commissioner's favor is the complete absence of congressional language supporting petitioner's contention that Congress intended to relieve entirely from taxation a certain portion of the corporate income. In effect petitioner seeks an exemption of a part of its income from any tax, either the normal tax or the excess profits tax, by the device of using a "constructive average base period net income" derived from § 722 to obtain a reduction of its liability for the excess profits tax, while insisting that it is entitled to hold on to the former and larger credit under § 26(e) for its "adjusted excess profits tax net income," computed on the basis of the old "average base period net income," an amount ultimately ignored by the Commissioner in determining the taxpayer's excess profits tax pursuant to § 722. This highly unusual result is not lightly to be inferred; and when both statute and legislative history are totally silent as to such an asserted congressional purpose, it would seem clearly unwarranted to find that any such complete exemption from taxation was intended.

■ While there is no case squarely in point, prior decisions are consistent with the Commissioner's position. See Advance Aluminum Casting Corp. v. Commissioner, 7 Cir., 1948, 168 F.2d 353, 355; West End Furniture Co. v. Commissioner, 1946, 6 T.C. 557. And in United States v. Koppers Co., Inc., 1955, 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, the Supreme Court twice stated by way of dictum that an adjustment of excess profits taxes under § 722 would "automatically" leave more of the corporation's income subject to the normal income tax and surtax. See notes 7 and 16, 348 U.S. at pages 259, 266–267, 75 S.Ct. at pages 270, 274.

The decision of the Tax Court is affirmed.