The CROWELL-COLLIER PUBLISH-
ING COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 52, Docket 24497.

United States Court of Appeals
Second Circuit.

Argued May 8, 1958.

Decided Oct. 7, 1958.

Jay O. Kramer, c/o Milton M. Bernard, New York City, for petitioner.

Harry Marselli, Atty., Dept. of Justice, Washington, D. C. (John N. Stull, Acting Asst. Atty. Gen., and Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

GALSTON, District Judge.

This is a petition for review of a decision of the Tax Court of the United States determining taxpayer's income tax liability for the calendar years 1943 and 1944, and excess profits tax liability for the calendar years 1943, 1944 and 1945.

Petitioner, a Delaware corporation, during the years 1936 through 1939 inclusive, was a publisher of four national magazines, one of which was Country Home. In each of these years Country Home showed a substantial loss, and at the end of 1939 its publication was discontinued. A substantial saving in petitioner's annual expenses was achieved thereby.

Prior to the year 1936 petitioner used the letter-press method for printing its magazines. During the years 1936 through 1939 it changed to a substantial degree to the gravure method of printing. This change effected a considerable saving.

In February of 1952 the Commissioner of Internal Revenue assessed a deficiency in petitioner's excess profits tax liability for the years 1943 through 1945 totaling $1,866,250.35. Petitioner filed with the Tax Court a petition for revision claiming an over-assessment for those years.

In the Tax Court petitioner raised several issues:

1. Whether petitioner was entitled to relief under § 722(b) (4) of the 1939 Code, 26 U.S.C.A. Excess Profits Taxes, § 722(b) (4), on the ground that its average base period net income was an inadequate standard of normal earnings because of the discontinuance at the end of the base period of its unprofitable magazine, Country Home.

2. Whether petitioner was entitled to relief under § 722(b) (4) on the ground that its average base period net income was an inadequate standard of normal earnings because of savings it realized due to changes which it made during the base period from the letter-press method of printing to a substantial use of the high-speed multicolor gravure method of printing.

3. Questioning the determination of petitioner's adjusted ("constructive") average base period net income resulting from both or either of the qualifying factors set forth above.

4. Whether petitioner is entitled under § 721 of the Code, 26 U.S.C.A. Excess Profits Taxes, § 721, to eliminate abnormal income resulting from gravure research and development.

5. Whether petitioner is entitled under § 711 of the Code to eliminate certain abnormal expenses incurred during the base period.

To the first, second and third questions the Tax Court answered in favor of petitioner and held that petitioner's income average for the applicable base period should be adjusted upwards by $518,000.

As to the fourth and fifth issues the Tax Court held for the Commissioner. The Court found that petitioner had not incurred research and development costs entitling it to relief under § 721. As to the fifth issue the Tax Court held that the expenses which petitioner sought to eliminate from the computation of the base period were not of "abnormal" nature within the purview of § 711.

On appeal to this court petitioner raises the following questions:

1. Whether in determining the amount of relief from excess profits taxes under § 722(b) (4) the Tax Court acted arbitrarily in that it allowed an amount of relief which was inconsistent with the court's specific findings of fact.

2. Whether the Tax Court erred in holding that a certain portion of the expenses allocated to Country Home magazine would have continued after cessation of its publication.

3. Whether the Tax Court erred in concluding that the taxpayer was not entitled to any relief under § 721 with respect to "abnormal" income allegedly received during the taxable year as the result of expenditures made during the base period years for research and development in the art of gravure printing.

4. Whether the Tax Court erred in failing to include in its decision specific determinations of an over-assessment of income tax for the year 1942, and an over-assessment in declared value excess profits taxes for 1944 where no deficiency with respect to those two taxes had been determined by the Commissioner.

5. Whether the Tax Court in determining the amount of relief granted to the taxpayer under § 722 erred in using the so-called "variable credit rule" contained in respondent's regulations.

6. Whether the Tax Court erred in concluding that the taxpayer was not entitled to any relief under § 711(b) (1) (J) for certain "abnormal deductions."

Other issues raised by petitioner have been conceded by respondent and will not be considered here.

The Excess Profits Tax Act of 1940 (§ 201 of the Second Revenue Act of 1940, c. 757, 54 Stat. 974) 26 U.S.C.A. Excess Profits Taxes, § 710 et seq., imposed an excess profits tax upon certain corporations for taxable years beginning after December 31, 1939. The tax was imposed on net income (modified by certain adjustments) in excess of a specific exemption of $5,000, and a norm or standard referred to as "the excess profits credit."

In computing its tax the petitioner used what is referred to as the "average income method." This method provides for the computation of the general average of the excess profits net income for taxable years beginning with the four base period years of 1936 to 1939 inclusive. The excess profits credit is 95% of such base period average income.

The 1940 Act contained two relief provisions: § 721 and § 722 of the Internal Revenue Code of 1939. § 721 provided relief for corporations which had received abnormal income in an excess profits tax year if the taxpayer could demonstrate that such abnormal income was attributable to events in other taxable years. The abnormal income was defined to mean income of exceptional type or magnitude which the taxpayer did not usually receive. If items of abnormal income could be attributed to other years in the light of the events in which such items had their origin, such abnormal income was pushed back or forward to such other years.

Code § 722, on the other hand, provided relief when the abnormalities were in the base period, either in form of low income or high deductions arising from certain specific causes. The section permits taxpayers to increase their excess profits credit by upward adjustments of their average base period net income to compensate for changes in the character of business occurring before January 1, 1940. Sec. 722 applies when the taxpayer can demonstrate that if certain changes in his business which occurred towards the end of the base period had occurred at the beginning of such period the average income level used to compute the excess profits tax credit would have been larger than the average income actually realized.

By its petition for review the taxpayer is endeavoring to present to this court on appeal issues decided by the Tax Court with respect to taxpayer's right to relief

under the two "abnormalities" sections described above as well as § 711(b) (1) (J) of the 1939 Code in regard to its excess profits tax liability for the taxable years in question.

At the outset respondent challenges this court's jurisdiction to review the decision of the Tax Court with respect to the taxpayer's right to relief under § 722, § 721 or § 711(b) (1) (J). In this, respondent relies on § 732(c) which provides as follows:

"(c) *Finality of determination.* If in the determination of the tax liability under this subchapter the determination of any question is necessary solely by reason of section 711(b) (1) * * * (J) * * *, section 721 or section 722, the determination of such question shall not be reviewed or redetermined by any court or agency except the Tax Court."

█ In an effort to avoid the effect of the prohibition of review contained in § 732(c) the taxpayer in its petition seeking review has asserted jurisdiction under § 7482 and § 7483 of the 1954 Code, 26 U.S.C.A. §§ 7482, 7483.[1] The taxpayer offers no explanation in support of its assertion of jurisdiction under these sections. Its contention must be that the enactment of the 1954 Code operates to confer jurisdiction upon this court to review decisions of the Tax Court on "abnormalities" issues, apparently upon the theory that the 1954 Code repealed the prohibition against such reviews contained in § 732(c) of the 1939 Code. However, neither the text nor the legislative history of § 7482 and § 7483 sustains the taxpayer's contention, but rather they show that § 732(c) still applies with respect to review of World War II excess profits tax relief proceedings. See Brown Paper Mill Co., Inc., v. Commissioner, 5 Cir., 255 F.2d 77.

Inasmuch as § 732(c) expressly and without any exception or qualification prohibits any review or redetermination by any court other than the Tax Court of any question "solely by reason of" § 722, § 721 or § 711(b) (1) (J) or (K)—the "abnormalities" provisions of the Excess Profits Tax Act—this court must decline to entertain the taxpayer's petition for review in this proceeding, and dismiss the appeal insofar as it relates to the questions arising and determined under those sections. The causes in which appellate courts have entertained reviews involving "abnormalities" fall into two categories. One comprises the so-called "standard issues." These are cases in which the Tax Court had decided that it had no jurisdiction to entertain "standard issues" in such a proceeding. See Martin Weiner Corporation v. Commissioner, 2 Cir., 1955, 223 F.2d 444; Commissioner of Internal Revenue v. Blue Diamond Coal Co., 6 Cir., 1956, 230 F.2d 312; Commissioner of Internal Revenue v. S. Frieder & Sons Co., 3 Cir., 1955, 228 F.2d 478; Commissioner of Internal Revenue v. Seminole Manufacturing Co., 5 Cir., 1956, 233 F.2d 395, and cases cited therein.

The second category of cases in which appellate courts have reviewed a determination of the Tax Court on "abnormalities" issues involves what may be called "combination questions." The Tax Court's decisions were reviewed because they were regarded as presenting determinations turning on other provisions in addition to the "abnormalities" sections. See Dowd-Feder, Inc., v. Commissioner, 6 Cir., 1949, 173 F.2d 673; Dayton Rubber Co. v. Commissioner, 6 Cir., 1957, 249 F.2d 2.

█ The present petition does not seek review of questions falling within either of these two categories. In particular, the questions could not be regarded as falling in the category of "combination questions." Each of the "abnormalities" questions presented here was decided by the Tax Court exclusively and solely by reason of § 721, § 722 or § 711(b) (1) (J). In these circumstances § 732(c) of the 1939 Code prohibits us from reviewing the Tax Court's de-

termination. And it makes no difference that both questions of law and of fact may be involved if the determination of the Tax Court is solely by reason of the "abnormalities" provisions. See George Kemp Real Estate Co. v. Commissioner, 2 Cir., 1950, 182 F.2d 847.

In its petition for review the taxpayer alleges that the Tax Court erred in failing to include in its decision specific determinations of an over-assessment of income tax for the year 1942 and an over-assessment in declared value excess-profits taxes for 1944, even if no deficiency with respect to those two taxes had been determined by the Commissioner. On this point respondent concedes the jurisdiction of this court.

However, in the notice to the petitioner, the Commissioner found an over-assessment of income tax and declared value excess-profits tax for the years 1942 and 1944. Petitioner did not file a formal claim for refund with respect to those years. Nevertheless, petitioner now urges that the Tax Court erred in not finding an over-assessment with respect to those years.

On this point petitioner relies on § 6512(b) (1)[2] of the 1954 Code, 26 U.S.C.A. § 6512(b) (1), which provides as far as relevant here that whenever there is a deficiency of income tax before the Tax Court for a given year, that court must find the correct income tax liability whether it results in a greater deficiency or an over-assessment.

■ Undoubtedly the Tax Court has the power to redetermine the correct tax to the extent that its jurisdiction has been properly invoked, whether such redetermination results in a deficiency or an over-assessment. See Old Colony Trust Co. v. Commissioner, 1928, 279 U. S. 716, 49 S.Ct. 499, 73 L.Ed. 918. But the taxpayer can invoke the jurisdiction of the Tax Court only when the Commissioner has determined a deficiency. See §§ 6212 and 6213 of the 1954 Code, 26 U.S.C.A. §§ 6212, 6213; Uncasvill Mfg. Co. v. Commissioner, 2 Cir., 1932, 55 F.2d

893. The Tax Court's authority to find an overpayment applies to taxes of the same kind with respect to which a deficiency has been determined by the Commissioner. This court has held that on petition to the Tax Court to review a determination of a deficiency in ordinary income taxes the Tax Court was without jurisdiction to redetermine taxpayer's excess profits taxes with respect to which no deficiency had been determined. Superheater Co. v. Commissioner, 2 Cir., 1942, 125 F.2d 514. The holding of this case is controlling here.

■ In its petition for review the taxpayer contends, in computing the amount of relief under § 722, that the Tax Court erred by applying the so-called "variable credit rule" contained in Regulations 112, 35.722–3(d) (5).[3] It is petitioner's position that this rule is not based on the statute and therefore is unconstitutional. The petitioner, however, neither in its brief nor on the argument sustained that position.

Sec. 722(a) provides that in computing the constructive average base period income of a taxpayer no regard shall be had to changes occurring after the base period and during excess profits tax years unless such changes are the result of a program to which the taxpayer was committed during the base period. The Regulations implement this by providing that where increased earnings in an excess profits tax year are due to the expansion to which the taxpayer had committed itself during the base period, the extent to which the change in the capacity for production actually entered into the business of the taxpayer in such excess profits tax year shall be the extent to which a change in the productive capacity is deemed to have existed in December 1939. Thus, if not full but only part productive capacity was attained in any one profit year, only part productive capacity would be allowed in computing taxpayer's constructive income during the base period.

Petitioner contends that in computing constructive income, full productive ca-

2. See Appendix (B).

3. See Appendix (C).

pacity should be allowed, whether such full capacity was actually attained during the excess profits tax year. Any other rule, says petitioner, would be unconstitutional.

The variable credit rule contained in the Regulations has been in effect for many years. It has been applied when appropriate upon the facts in numerous cases before the Tax Court.

Nielsen Lithographing Co. v. Commissioner, 19 T.C. 605;

Southern California Edison Co. v. Commissioner, 19 T.C. 935;

Yeast Products, Inc., v. Commissioner, 21 T.C. 308;

Lily Mills Co. v. Commissioner, 21 T.C. 900;

Springfield Tablet Manufacturing Co. v. Commissioner, 22 T.C. 35;

Journal-Tribune Publishing Co. v. Commissioner, 24 T.C. 1048;

R. J. M. Co. v. Commissioner, 24 T.C. 1032;

Hydraulic Press Manufacturing Co. v. Commissioner, 27 T.C. 278.

These Regulations set forth a reasonable rule for adjusting the taxpayer's constructive income average on the basis of production levels actually attained. Petitioner in effect seeks to strike down a reasonable rule and to substitute a rule for adjusting constructive income average without reference to reality but merely on a hypothetical productive capacity—even though subsequent events prove the hypothesis incorrect. This we cannot do. See Mutual Shoe Co. v. Commissioner, 1 Cir., 1956, 238 F.2d 729, 734, and Commissioner of Internal Revenue v. South Texas Co., 1947, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.

The decision of the Tax Court is affirmed.

### APPENDIX

(A) "§ 7482. Courts of review

"(a) *Jurisdiction.*—The United States Courts of Appeals shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 1254 of Title 28 of the United States Code.

\* \* \* \* \* \*

"§ 7483. Petition for review

"The decision of the Tax Court may be reviewed by a United States Court of Appeals as provided in section 7482 if a petition for such review is filed by either the Secretary (or his delegate) or the taxpayer within 3 months after the decision is rendered. If, however, a petition for such review is so filed by one party to the proceeding, a petition for review of the decision of the Tax Court may be filed by any other party to the proceeding within 4 months after such decision is rendered."

(B) "Sec. 6512(b) (1)

"(b) Overpayment determined by Tax Court.—

"(1) Jurisdiction to determine.—If the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year, or of estate tax in respect of the taxable estate of the same decedent, in respect of which the Secretary or his delegate determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer."

(C) Regulations 112 Sec. 35.722–3(d), pp. 120 and 121:

" \* \* \* there are instances in which the business may not have reached its full level of normal operations during the *excess profits tax taxable years.* In such

situations it would obviously be unfair to allow the use of a 'yardstick' based on full level of normal operations, for the measurement of earnings based on operations which have not reached that level." (Emphasis supplied.)